Argued at Pendleton May 2; affirmed May 31; rehearing denied
July 5, 1933

# STATE *v.* EVANS ET AL.

(22 P. (2d) 496)

*J. A. Burleigh,* of Enterprise, and *John H. Carson,* of Salem, for appellants.

*Robert V. Chrisman,* District Attorney, of Enterprise, for the State.

■ BEAN, J. Defendants assign as error misconduct of the district attorney in making his opening statement to the jury to the effect that at the time of the arrest the defendants put the officer making the arrest "through an ordeal".

The circumstances bearing on the case, as the testimony indicated, which it seems necessary to refer to, are as follows: On September 3, 1932, the defendants came to Wallowa county and obtained a fire permit at the forest office at Wallowa, Oregon, to build a camp fire in the Joseph Creek, Peavine and Broady Creek country in the north part of Wallowa county. George Rogers, state police officer, game division, for Wallowa county, upon being informed of this, went from Enterprise to Kirkland Springs in Wallowa county, Oregon, on September 11, 1932, to search for the camp of the defendants. Kirkland Springs is 42 miles north of Enterprise, the county seat. On the morning of September 12, Rogers, in searching in that vicinity for the camp of defendants, met defendants about three miles from Kirkland Springs near Peavine creek, also known as Lupine creek. Evans was riding a gray mule, leading a brown mule, upon which there was a pack saddle and a bunch of gunny sacks. Acuff was walking. Defendants stated they were look-

ing for horses and that their camp was on Joseph creek. At the time there were blood stains on the shirts and sleeves of both defendants. After Rogers parted from the defendants, they proceeded in a direction which was away from their camp, later discovered by Rogers, not on Joseph creek but on Peavine creek. Rogers discovered the camp about half an hour after the above meeting with the defendants. It was located about a quarter of a mile from the place where he first met the defendants. When Rogers arrived at the camp defendants were sitting on a log in front of the camp with rifles across their laps and resisted his attempt to search their camp, but finally submitted to the search, following Rogers and covering him the while with their rifles as he made the search. In the camp of defendants Rogers found one and one-half fifty-pound sacks of table salt; two hanks of sack twine and a gunny sack full of flour sacks, which had been recently bleached out and were still wet, and from just below the camp fire of defendants Rogers saw a drying rack, 204 feet above the camp fire of defendants. This rack was full of jerked elk meat in the process of being smoked and made into jerky. He found two flour sacks full of completely cured and jerked elk meat hanging on the rack and the rack, which was 7' 3" x 3' 9", built of poles with a canvas cover over the top, was full of elk meat being processed into jerked meat. He then returned down the well-beaten trail from the rack to the lower part of the camp, and on the way found hidden under a log a stew kettle with a lid on. On lifting the lid off the kettle he found it was partly full of elk meat steaming. He then attempted to place the defendants, who were still pointing their rifles at him, under arrest, but they resisted for a half or three-quarters of an hour by covering him with their rifles. The defend-

ant Acuff finally submitted to arrest and the defendant Evans said he would appear in Enterprise on the following day. He and his wife packed up and left the camp and Rogers returned to Kirkland Springs with Acuff, whom he sent to Enterprise. Rogers, with two forest rangers and the wife of one of them, returned to the camp of defendants on Peavine creek and made a complete search of the camp and surrounding country.

From the testimony adduced in regard to the defendants resisting arrest and pointing their rifles at the officer, it would seem that the statement of the district attorney was a proper one, although it was mild. The evidence tended to show that defendants resisted the search and arrest by pointing their rifles at the officer, and the district attorney was warranted in stating that he expected to prove this, which was borne out by the testimony. 1 Brickwood, Sackett, Instructions, (3d Ed.) 60, § 74; 2 R. C. L. 410, § 8; 16 C. J. 890, § 2226; Underhill, Criminal Evidence, (3d Ed.) 290, § 206; § 39-113, Oregon Code 1930. This section of the code plainly provides that any hindrance or interference to such search shall be prima facie evidence of a violation of the law by the party or parties who hindered or interfered or attempted to hinder or interfere in such search or examination. There was no error of the court in allowing the statement by the district attorney.

■ Appellants assign error in the admission in evidence of plaintiff's exhibits, consisting of a stew kettle containing elk meat; a sack of salt and a half sack of salt; two flour sacks full of fresh elk meat ready to be smoked, and some other things above mentioned found

in the camp of defendants, and the horns from the carcasses of two elk recently killed, found near the camp of defendants.

The main objection to these exhibits is that they were not all found in the possession of defendants. The testimony tended to show that these various exhibits, with the exception of the elk horns, were under the dominion and control of the defendants and were as much in their possession and control, if the testimony was believed by the jury, as though they had been found in the immediate grasp of defendants. The jury had before it a word picture of the whole camp, showing that there was a well-beaten trail leading from the tent and camp fire to the rack, where the meat was dried and tracks therein of hobnailed shoes similar to those worn by the defendants. All of the circumstances were delineated to the jury and the objection is practically to the weight of the testimony and not to its competency. We think the exhibits referred to were admissible in evidence and that there was no error committed in regard thereto. The jury was informed that this was in the timber or woods of a forest reserve, and it was proper for it to have all of the circumstances, including the finding of two elk slain, from which the horns exhibited were taken.

■ Defendants assign as error the refusal of the court to give any one of the defendants' requested instructions Nos. 2 to 11, in regard to circumstantial evidence. The court instructed the jury, among other things, as follows:

"I instruct you that circumstantial evidence is the proof of such facts and circumstances connected with or concerning the commission of the crime charged as tends to show the guilt or innocence of the party charged. If such facts and circumstances are sufficient

to satisfy the jury of the guilt of the accused beyond a reasonable doubt, then it is sufficient to warrant a verdict of guilty''.

The court also charged:

''No other conclusion but that of the guilt of the accused must fairly and reasonably grow out of the evidence, but the facts must be absolutely incompatible with innocence, and incapable of explanation upon any other hypothesis than that of guilt''.

Defendants, by their requested instructions, contend that strong suspicion of defendants' guilt arising from circumstantial evidence is not sufficient to overcome the presumption of innocence in favor of defendants, citing *State v. Johnson,* 122 Or. 399, 403, (259 P. 423), and that circumstantial evidence will not support a conviction if the evidence be as consistent with the innocence of the defendants as with their guilt, citing *State v. Glasburn,* 116 Or. 451, 456 (241 P. 846); Underhill, Criminal Evidence, (2d Ed.) 7, § 6. The jury might reasonably conclude from the evidence that the defendants were practically caught red-handed.

Among defendants' requested instructions in regard to circumstantial evidence, which we think is a fair representation of the others, is the fifth, which reads as follows:

''I instruct you, Gentlemen of the Jury, that the test of the sufficiency of circumstantial evidence in a criminal case is whether the circumstances, as proven are capable of explanation upon any reasonable hypothesis consistent with the defendant's innocence, and if they are capable of such explanation, then the defendant should be acquitted''.

We think that the instruction quoted above, as given by the trial court, together with the other instructions, fully covered the instructions requested by

the defendants and that the same were fair to the defendants. Under the instructions of the court, the jury was not permitted to found its verdict upon suspicion. The jury was plainly told that the facts must be absolutely incompatible with innocence and incapable of explanation upon any other hypothesis than that of guilt.

An exception was reserved to the instructions, among other things, to the effect that the fact the officer did not have a search warrant would not justify any resistance by defendants and is no defense in the case. It is contended on behalf of defendants that they were not on trial for resisting a search or an officer in the discharge of his duty, and that the instructions would confuse the jury and distract their attention from the real issue. The use of firearms, which the testimony tended to show was made by defendants, was an incident to the search and the finding of the elk meat. The state police officer, game division, who was charged with the enforcement of the game laws, was acting within the scope of his duty in searching the woods and the hunting camp which he had reason to believe contained evidence of a violation of the game laws, without a search warrant. Section 39-113, Oregon Code 1930. This section plainly provides that officers shall have power to search any person and examine any boat, automobile, conveyance or vehicle, etc., and "all other places, except private dwelling houses", wherein game or game fish may be kept or sold. The statute is intended to warrant a reasonable search of such places by a police officer. See *State v. Lee,* 120 Or. 643, 648 (253 P. 533).

It is urged by counsel for defendants that the state police officer had no reason to believe that there had

been a violation of the law so as to warrant his search of the camp, and that as far as defendants' consent is concerned it was coerced. The court instructed the jury that if the officer had reason to believe the camp of defendants contained evidence of violation of the game laws he had a right, as a matter of law, to search the camp without a search warrant. The officer acting in the matter was entitled to take into consideration all of the facts and circumstances. He had been informed by the forest ranger of the entry into the forest reserve by the defendants. He had met the defendants near their camp and noticed blood upon their clothing, and, taking into consideration the season of the year and all the circumstances, the jury was warranted in believing that the state officer had reasonable grounds for making the search. Further, there was no motion to suppress the evidence on account of an illegal search.

■■ Any hindrance or interference to such search is declared by the statute to be prima facie evidence of a violation of the laws by the parties who so hinder or interfere. The inhibition against search and seizure does not extend to woods or open fields or public lands, such as a forest reserve. Cornelius, Search and Seizure, (2d Ed.) § 11, p. 49; 27 A. L. R. 732; 39 A. L. R. 828. The resistance by the use of firearms, as the testimony tended to show, was so intermixed or blended with the offense alleged in the indictment that they formed an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of either of them which could not be given without showing the other, was competent evidence of the offense charged. The theory upon which this evidence is relevant is that the motive prompting the commis-

sion of the several crimes is the same and that the objects aimed at are identical, and that it is all one transaction. Underhill, Criminal Evidence (3d Ed.) § 152, p. 194; *State v. Roberts,* 15 Or. 187, 194 (13 P. 896).

■ The several acts of the defendants, detailed by the testimony with respect to time and locality, formed an inseparable transaction and complete description of the offense charged in the indictment could not be given without detailing the particulars of such other acts. Therefore, evidence of any or all of the component parts thereof was admissible to prove the offense charged. Underhill, Criminal Evidence (3d Ed.) § 151, p. 192.

■ Testimony upon the part of defendants was offered as to what the witness saw in the trail on the east side of the canon near the hunting camp in the way of tracks on September 16 of that year. The question was objected to on the grounds that it was too remote. Several people had been in the vicinity of the camp after the arrest of the defendant and the objection was sustained as to the tracks and location of the trail. There was no showing that the condition of the trail was the same as to footprints on September 16 as it was on September 12, the date of the arrest. It was on a cattle range where there were several trails. There was no error in excluding the testimony. It would not have assisted the jury in arriving at its conclusions. There was no answer tendered by the defendants so as to show the materiality of the same.

■ Appellants contend that there was error in the rendition of the verdict and judgment because of want of proof of venue. The burden of proving venue, as alleged, and beyond a reasonable doubt, was upon the state. This, however, may be proven by all of the cir-

cumstances shown by the testimony. Underhill on Criminal Evidence (3d Ed.) § 467. The distance from the city of Enterprise, county seat of Wallowa county, to Kirkland Springs, and from Kirkland Springs to the camp mentioned, was detailed. It would be a matter of judicial knowledge that Enterprise is the county seat of Wallowa county; so also as to the boundaries of the county. *State v. Miller,* 133 Or. 256, 259 (289 P. 1063); *State v. Casey,* 108 Or. 386, 403 (213 P. 771, 217 P. 632). George Rogers, the state police officer, testified that he had been enforcing the game laws in Wallowa county, Oregon, for 12 years and that on September 11, 1932, he made a trip to Kirkland Springs in the Peavine country to search for the camp of Frank Evans, searching in the Kirkland Springs and Peavine country and staying that night at Kirkland Springs; that on the following morning, September 12, he returned to search the upper end of Peavine district. He stated that Kirkland Springs was in Wallowa county, 42 miles from Enterprise, Oregon; that Peavine was located three miles from Kirkland Springs and that Peavine is a small stream known on the forest survey map as Lupine. The state's witness Hall marked the exact location of the camp of defendants, where they had elk meat in their possession, upon the official government contour map, plaintiff's exhibit Z. We think there was sufficient testimony to show that the premises where the offense was alleged to have been committed were in Wallowa county. There was no room for mistake in this respect.

The jury was fully instructed on the question of the state proving the venue beyond a reasonable doubt, and its verdict indicates that the offense was committed in Wallowa county.

■ The defendants complain of the judgment of sentence, a fine of $500 and three months in the county jail. The sentence imposed was within the statutory direction and evidently the court took into consideration all of the circumstances in connection with the offense in aggravation of the punishment which was within the discretion of the trial court. It is apparent that the high-handed methods used by the defendants influenced the judgment of the court. See *State v. Wise,* 32 Or. 280, 283 (50 P. 800); *State v. Lewis,* 113 Or. 359, 369 (230 P. 543, 232 P. 1013).

From a careful examination of the record, without detailing all of the points or circumstances, we find no error therein.

The judgment of the circuit court will, therefore, be affirmed.

ROSSMAN, CAMPBELL, and BAILEY, JJ., concur.