Argued March 25, affirmed April 20, reconsideration denied
July 13, petition for review denied October 11, 1977

# STATE OF OREGON, *Respondent,*
*v.*
## LESLY LYNN FENT, *Appellant.*
### (No. C 76-09-12490, CA 7256)
562 P2d 1239

Jeffrey S. Mutnick, Portland, argued the cause and filed the brief for appellant.

John W. Burgess, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

Defendant appeals his conviction of being an ex-convict in possession of a weapon, assigning as error the denial of his motion to suppress a pistol as evidence.

Detective Johnson and another Portland policeman went to an apartment house in response to a call from the manager. The manager informed them that another officer had come by three nights before looking unsuccessfully for a person of defendant's description. That officer told the manager that the person was "wanted" and asked the manager to call the police if he showed up. The manager then informed the officers that he had just observed the defendant go from apartment 3B to apartment 3A. The latter apartment was unoccupied at that time because, the manager said, the tenant had told him that she was leaving for a few days because of fear that her boyfriend would come and make trouble. He reported that defendant stood outside of apartment 3A for a few minutes and then entered it. He remained in the apartment for five to ten minutes, during which he once looked about through a window. He then left the apartment and returned to apartment 3B. The officers were unable to verify the defendant's wanted status, but they went to apartment 3B to investigate the apparent unlawful entry of apartment 3A. Detective Johnson, alone, knocked on the door and was allowed to enter by the person answering the door.

As Johnson entered, the defendant dropped to a position on his knees. Johnson asked the defendant his name and the defendant replied that it was David Hartman. Asked for identification, the defendant said he had none. Johnson then asked the defendant if he had just come from the other apartment and the defendant said that he had and that his girlfriend lived there. Johnson then asked the defendant if he could come outside to talk about it and the defendant agreed to do so. Johnson kept the defendant under visual observation throughout this exchange and,

because defendant might have been wanted and because he suspected that the defendant had been involved in a burglary, Johnson intended to frisk the defendant for weapons as soon as they got outside.

The defendant asked one of his companions for his coat, a blue denim jacket. As it was passed to him, the detective intercepted it, patted it down, and felt two small hard objects in the pocket. He reached in and extracted two .22 caliber bullets. He then told the defendant to put his hands on his head. Instead of doing so, the defendant asked "What for?" and leaned back on his haunches. Johnson pushed the defendant off balance in order to require him to extend his hands forward for balance. As the defendant did so, Johnson saw a pistol in a holster attached to the back of defendant's belt. Johnson seized it.

The trial court granted the motion to suppress the two bullets as evidence, but denied the motion as to the pistol.

■ The issue in this case is whether the officer's suspicion that defendant had committed a burglary authorized him to require that the defendant position himself so as to expose his weapon to visual observation. We treat that authority for a limited seizure of the person as analogous to and co-extensive with the right to frisk pursuant to a stop.

Because the trial court suppressed the bullets, their discovery is irrelevant unless they constitute a poison tree of which the gun is the fruit. In *Wong Sun v. United States,* 371 US 471, 487-88, 83 S Ct 407, 9 L Ed 2d 441 (1963), the United States Supreme Court drew the distinction between tainted fruit of the poisonous tree and independently discovered evidence as follows:

"* * * We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have

come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

■ Assuming for argument that the search of the jacket and seizure of the bullets was constitutionally impermissible, that event merely hastened a frisk which would have happened immediately thereafter regardless of whether bullets were found in the jacket. The officer had determined to make the frisk at the first opportune moment and, because the bullets were found, the observation of the gun occurred inside instead of outside the room. Therefore we conclude that the discovery of the gun was not the result of the exploitation of the finding of the bullets and was therefore not tainted thereby.

■■ A police officer's authority to stop and frisk the defendant is controlled by statutes which purport to codify constitutional principles. *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977). Detective Johnson's suspicion that the defendant had committed a burglary, based on the information given him by the apartment manager that he had entered an apartment in the absence of its tenant and left five to ten minutes later, was reasonable under ORS 131.605(4) which provides:

" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

Having such reasonable suspicion, the detective was authorized to stop the defendant for purposes of inquiry under ORS 131.615(1) which provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

[ 253 ]

■  A stop involves a seizure of the person sufficient for inquiry under ORS 131.605(5) which provides:

> "A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

■■  A visual search of the defendant's person is less intrusive upon privacy than is a frisk and it is therefore permissible if a frisk is permitted. The detective suspected that the defendant might be armed because he was wanted on some unknown charge and because there was probable cause to believe that he had committed a burglary. It is reasonable to infer from the detective's testimony, as did the trial court, that people who commit burglaries commonly carry weapons and that protection of the officer's safety justifies the frisk of a person reasonably suspected of burglary. Thus the frisk would have been authorized by ORS 131.625(1) which provides:

> "A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present."

Therefore the discovery and seizure of the gun were lawful and the motion to suppress was properly denied as to the gun.

Affirmed.