Argued March 20, affirmed June 11,
reconsideration denied August 14, petition
for review allowed September 5, 1979

## STATE OF OREGON, *Appellant,*

*v.*

## ODAM, et al, *Respondents.*
### (Nos. C 14010, C 14011 & C 14012, CA 12536)

595 P2d 1277

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for appellant. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Allison Smith, Assistant Attorney General, Salem.

Robert G. Danielson, Sweet Home, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Tanzer, Richardson, and Roberts, Judges.

RICHARDSON, J.

[551]

## RICHARDSON, J.

The state appeals an order suppressing evidence seized from a vehicle in which defendants were riding. The issue is whether the stop of the motor vehicle was lawful.

In the early afternoon of August 19, 1978, a State Police Officer assigned to fish and game enforcement stopped the vehicle in which the defendants were riding. He seized two freshly killed deer carcasses and issued citations to the three defendants charging them with illegal possession of deer. The stop was made on a private road owned by a timber company.

At the hearing on defendants' motion to suppress the deer seized as a result of the stop, the officer testified that approximately one week prior to the stop he had received information from a confidential, reliable source that illegal deer killing was being done on the timber company's property. The only game animal season open at the time was for bear. The confidential information did not relate to any particular individual or vehicle. Based on this information the officer decided to check the area. He testified that he had 24 years experience as a game officer and the only effective method he knew for checking for illegal game violations was to check each vehicle in a hunting or fishing area. When he arrived at the area, he testified that he intended to stop every vehicle he encountered and check for illegal fish or game.

He entered the private road at a fire gate manned by the timber company's fire watchman. Approximately three miles from the gate he encountered the vehicle containing the defendants. He turned on a visible red light and flagged the vehicle down. He testified that he had no basis for stopping this particular vehicle other than his intention to stop all vehicles he saw in the area. The officer was driving a marked police vehicle and was wearing a game officer's uniform.

After he approached the stopped vehicle, he saw a hunting rifle leaning against the seat. He also observed some deer hair on a tool box attached to the side of the vehicle. He testified that he recognized the deer hair as that of "summer deer" and he inferred from this that a deer had recently been killed. He opened the tool box and discovered a deer carcass, wrapped in rain gear. He found a second deer carcass in another tool box on the vehicle.

The state argues that the stop was justified on either of two statutory bases, ORS 131.615(1) or ORS 496.660(1).

ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

To justify a stop under this statute there must be specific articulable facts upon which to base a reasonable suspicion that the occupants of the vehicle committed a crime. *State v. Valdez*, 277 Or 621, 561 P2d 1006 (1977); *State v. Brown*, 31 Or App 501, 570 P2d 1001 (1977). The only articulable fact known to the officer prior to the stop was that there had been illegal deer kills in the area sometime prior to his receipt of the information a week earlier. That information did not relate to these defendants or this vehicle and was not sufficient to justify a stop of a vehicle under ORS 131.615.

ORS 496.660(1) grants game officers authority to make a warrantless search of certain places, including vehicles, when they have "reason to believe" that game law violations have occurred:

"Any person mentioned in ORS 496.645 [game officers] may search any person, and examine any boat, automobile, aircraft, conveyance, vehicle, game bag, game coat or other receptacle for wildlife, or cold storage rooms, warehouses, taverns, boarding houses, restaurants, club rooms, outhouses, saloons, depots,

[554]

hotels and all other places, except private dwelling houses, wherein wildlife may be kept or sold, and examine all packages and boxes held either for storage or shipment which they have reason to believe contain evidence of violations of the wildlife laws."

The state concedes, and we agree, that in order to make the search allowed by this statute, the game officer must have reason to believe that there is evidence of a violation of the wildlife laws in the place searched. *See State v. Evans*, 143 Or 603, 22 P2d 496 (1933). The statutory authority to search a vehicle is inseparable from the authority to stop the vehicle for purposes of a search. In other words, the game officer must have reason to believe the vehicle contains evidence of wildlife law violations before the stop to search can be made. The information possessed by the officer prior to stopping defendants' vehicle did not give him a basis to believe there was evidence of wildlife law violations in the vehicle. The stop cannot be justified under ORS 496.660(1).

In a supplemental brief, the state argues that the stop in this case does not violate the Fourth Amendment to the United States Constitution and therefor the evidence should not be suppressed. The argument is based on a recent decision of the United States Supreme Court, *Delaware v. Prouse*, ___ US ___, 99 S Ct 1391, 59 L Ed 2d 660 (1979). In that case the Supreme Court held the random stop of an automobile for the purpose of checking the vehicle registration and the operator's license violated the Fourth Amendment in the absence of an articulable and reasonable suspicion that vehicle or the operator was unlicensed. The court stated:

"* * *This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning all oncoming traffic at roadblock-type

[555]

stops is one possible alternative. * * *" (Footnote omitted.) ___ US at ___, 59 L Ed 2d at 673-74.[1]

The state argues that the stop in this case is in the nature of a roadblock wherein the officer developed neutral criterion for stopping vehicles, *i.e.*, he intended to stop every vehicle he encountered.

We do not agree this stop was a roadblock stop and therefore we do not reach the question whether ORS 131.615(1) or 496.660(1) prohibits a roadblock or its equivalent.

Affirmed.

**ROBERTS, J.,** dissenting opinion.

I disagree with the majority opinion holding that the stop of the vehicle cannot be justified under ORS 131.615(1) or 496.660(1) and, therefore, respectfully dissent.

The majority opinion discusses *Delaware v. Prouse,* ___ US ___, 99 S Ct 1391, 59 L Ed 2d 660, (1979), but does not reach a conclusion as to its applicability to this case. The majority correctly points out that the questioning of all oncoming traffic at a roadblock-type stop is one possible alternative that would not come under the *Delaware* decision. The majority opinion stops there. I believe the facts of this case demonstrate

---

[1] The concurring opinion of Justice Blackmun, joined in by Justice Powell, states:

"* * * And I would not regard the present case as a precedent that throws any constitutional shadow upon the necessarily somewhat individualized and perhaps largely random examinations by game wardens in the performance of their duties. In a situation of that type, it seems to me, the Court's balancing process, and the value factors under consideration, would be quite different." ___ US at ___, 59 L Ed 2d at 674.

that this was, in fact, a roadblock-type situation contemplated by *Delaware*.[1]

The majority holds that the stop is prohibited by ORS 131.615(1). This statute is based on *Terry v. Ohio*, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968). Proposed Oregon Criminal Code 26, Commentary § 31 (1972).[2] The *Terry* court held that a police officer may briefly detain a person on the street without probable cause to arrest in order to make "reasonable inquiries" where the officer can cite articulable facts leading to his belief that criminal activity is afoot. 392 US at 30. In *State v. Cloman*, 254 Or 1, 456 P2d 67 (1969), the Oregon Supreme Court extended the *Terry* stop to motor vehicles and noted reasonable suspicion "to be of less quantum than probable cause to arrest." 245 Or at 6. Because our statute was based upon *Terry*, we should now be guided by the most recent language of the United States Supreme Court on this subject.

In *Delaware* the court said:

"* * * This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy

---

[1] It should also be noted that the concurring opinion in *Delaware* states:

"* * * And I would not regard the present case as a precedent that throws any constitutional shadow upon the necessarily somewhat individualized and perhaps largely random examinations by game wardens in the performance of their duties. In a situation of this type, it seems to me, the Court's balancing process, and the value factors under consideration, would be quite different." 59 L Ed 2d at 674.

While the majority opinion in *Delaware* makes no comment on this observation it is not disavowed.

[2] Recognizing the fact that "the statute adopts a different rule than the decision in *Terry* by deleting the words "or is about to commit, " *State v. Valdez*, 277 Or 621, n 4 at 625, 561 P2d 1006 (1977), I do not believe that distinction is relevant here.

interfered with at the unbridled discretion of police officers. * * *" 59 L Ed 2d at 674.

I believe the question presented in this case is whether this game officer acted with "unbridled discretion." I think not.

I find the facts of this case to be much more than set forth in the majority opinion. The officer had gone to the area where defendant's automobile was stopped because a reliable informant had told him about a week earlier that some illegal deer killing was going on "above the gate." The vehicle was seen by the officer on a private road owned by Weyerhauser Timber Co. about three miles above a gate manned by a timber company fire watchman. The officer thought the truck had been stopped on a high spot on the wrong side of the road and that it had just started toward the officer's vehicle. It was a Saturday afternoon when few loggers, if any, were working in the remote, lightly traveled area. This was the first vehicle the officer had seen since coming through the gate three miles earlier.

The area where the automobile was stopped was so remote that persons, if any, who would be encountered would likely be there only for logging operations or to hunt bear, which was permitted at that particular time. In view of the officer's reliable information that illegal deer killing was occurring in the area and, as the majority opinion points out, that he intended "to stop every vehicle he encountered," he acted in the only way possible under the circumstances to determine if there were game violations occurring in the area which, I would hold, does not amount to 'unbridled discretion' in this instance.

Admittedly, this was not a typical roadblock where officers wait for automobiles to arrive at the roadblock, but it would be ridiculous to expect a game officer to use that method. Obviously, in the area described, he might wait days for one automobile. The more effective law enforcement practice would be to seek out the vehicles and inspect each and every one. The

fact that this was the first vehicle stopped is not important for it may have been the only one in the area. What is important is the game officer's intent to stop every vehicle which I conclude *Delaware* permits.

For these reasons I dissent.