Argued and submitted January 17, affirmed June 18, 1986

# STATE OF OREGON,
*Appellant,*

*v.*

# CHARLENE MARIE BLACK,
*Respondent.*

(85-2989-K; CA A36962)

721 P2d 842

Terry Ann Leggert, Assistant Attorney General, Salem,

argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Robert M. Burrows, Grants Pass, argued the cause for respondent. With him on the brief was Burrows, Hull, Mowrey & Thompson, Grants Pass.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant was charged with driving under the influence of intoxicants (DUII) in violation of *former* ORS 487.540. Before trial, she moved to suppress all evidence obtained after she was stopped by the police officer on the ground that the stop was unlawful under *State v. Lindstrom,* 37 Or App 513, 588 P2d 44 (1978), Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The trial court granted her motion, and the state appeals under ORS 138.060(3). We affirm.

The parties stipulated to the facts necessary to decide the motion. At 10:59 a.m. on Easter Sunday, the Oregon State Police received a telephone call from a woman in Selma, stating that a brown Ford Escort, traveling northbound on Highway 199, was speeding and weaving. The caller did not identify herself. A dispatcher radioed the information to a state trooper who, at 11:10 a.m., observed a car matching the description driving northbound on Highway 199 at Wonder, which is located approximately 11 miles from Selma. He did not observe any erratic driving, and he estimated the car's speed as "close to 55." He stopped the car, which defendant was driving, and subsequently arrested her for DUII.

The pertinent statutes provide:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry." ORS 131.615(1).

"As used in ORS 131.605 to 131.625, unless the context requires otherwise:

" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625." ORS 131.605(4).

The "stop and frisk" statutes, ORS 131.605 to 131.625, are the result of the legislature's effort to codify the rationales of *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), and *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969). *State v. Valdez,* 277 Or 621, 625, 561 P2d 1006 (1977). In *Terry,* the Court held that a police officer who reasonably suspects that criminal activity is afoot may, consistently with the Fourth

Amendment, briefly detain the suspect for further investigation and, if the officer believes that the person is armed and presently dangerous, conduct a limited search of that person for weapons. In *Cloman,* the court held that *"police can stop a car to determine the identity of the vehicle and its occupants if they have a reasonable suspicion that the car or its occupants have a connection with criminal activity."* 254 Or at 6.

The standard of reasonable suspicion in ORS 131.615(1) is less stringent than the standard of probable cause to arrest. *State v. Valdez, supra,* 277 Or at 628. The question under that statute is whether a reasonable police officer, considering the totality of the circumstances, would have believed that the person stopped had committed a crime. *See State v. Valdez, supra,* 277 Or at 625-26; *State v. Brown,* 31 Or App 501, 505, 570 P2d 1001 (1977).

Had the trooper personally observed the conduct described by the anonymous caller, he would have had an objective basis for reasonably suspecting that defendant had committed the crimes of DUII or reckless driving, or both. *See former* ORS 487.540; *former* 487.550.[1] However, he did not personally observe any conduct which could have supported that belief. The critical question is whether he was justified in relying on the information received from the anonymous telephone caller.

As a preliminary matter, the record does not indicate whether the arresting officer knew that the dispatcher's information was from an anonymous telephone call.[2] The analysis is the same in any event. In *Whiteley v. Warden,* 401 US 560, 91 S Ct 1031, 28 L Ed 2d 306 (1971), the Court held that, although a police officer may act on the strength of a radio bulletin indicating that there is a warrant out for an individual's arrest and may assume that the officer who

---

[1] *Former* ORS 487.540 was repealed by Or Laws 1983, ch 338, § 978, and was replaced by Or Laws 1983, ch 338, § 587, *amended by* Or Laws 1985, ch 16, § 293 (now ORS 813.010), effective January 1, 1986. *Former* ORS 487.550 was repealed by Or Laws 1983, ch 338, § 978, and was replaced by Or Laws 1983, ch 338, § 571 (now ORS 811.140), effective January 1, 1986. Both DUII and reckless driving are crimes for the purposes of ORS 131.615(1). *See* ORS 131.605(1); 161.515; 161.615.

[2] The officer's notebook entry concerning the dispatcher's report merely states, "Writer received a radio report via the radio of a light brown over dark brown Ford Escort traveling at a high rate and driving erratically."

obtained the arrest warrant presented the issuing magistrate with facts sufficient to constitute probable cause to arrest, the arrest of the individual violates the Fourth Amendment if it turns out that there was in fact no probable cause to support the issuance of the warrant. "[A]n otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whiteley v. Warden,* 401 US at 568. The same rule applies when an officer makes a stop on the basis of a "wanted flyer" from another police department. *United States v. Hensley,* 469 US 221, 105 S Ct 675, 83 L Ed 2d 604 (1985). *See also* 1 La Fave, *Search and Seizure, A Treatise on the Fourth Amendment* 621-31, § 3.5(b) (1978). Those federal cases reflect an interpretation that should be applied to the state statute.

■ It cannot be successfully argued that the trooper in this case could have reasonably suspected that defendant had committed a crime merely because he could have assumed that the dispatcher's information was based on a reliable source. The appropriate inquiry is whether the information possessed collectively by the trooper and the dispatcher gave rise to a reasonable suspicion that defendant had committed a crime. Were it otherwise, an agency or officer possessed with information insufficient to give rise to a reasonable suspicion to stop someone under ORS 131.615(1) could circumvent the statutory requirement simply by directing or asking another agency or officer to make the stop. *See* 1 La Fave, *supra,* 624, § 3.5.

We have upheld stops of persons under ORS 131.615(1) based on information from victims of or witnesses to crimes and confidential informants in several cases. *See State v. Taylor,* 62 Or App 586, 661 P2d 569, *rev den* 295 Or 297 (1983) (informant's tip that he had observed possession and sale of cocaine in car in which the defendant was subsequently discovered); *State v. Dickenson,* 43 Or App 1023, 607 P2d 754 (1979) (anonymous phone call and numerous complaints that the defendant was catching salmon out of season); *State v. Lindstrom, supra* (victim's complaint); *State v. Fent,* 29 Or App 249, 562 P2d 1239, *rev den* 280 Or 1 (1977) (apartment manager's tip that the defendant had entered an apartment in the absence of its tenant and left five to ten minutes later); *but see State v. Odam,* 40 Or App 551, 595 P2d 1277 (1979), *aff'd by*

*equally divided court* 290 Or 160, 619 P2d 647 (1980) (invalidating stop based on informant's tip that illegal deer killing was occurring on certain property, when tip did not relate to any particular person or vehicle).

In *State v. Lindstrom, supra,* on which both parties rely, a man flagged down a police officer during an early morning patrol and reported that the driver of a yellow Ford pickup truck was driving recklessly and had nearly run him off the road. He also stated that he had argued with the driver and that the driver appeared intoxicated and had aimed a rifle at him. The complaining man declined to give his name, and the police officer was unable to record his license plate number. Shortly thereafter, and approximately one-half mile down the road, the officer observed the described truck proceeding in a normal manner. He stopped it and subsequently arrested the driver for DUII. We held that the stop was permissible under ORS 131.615(1). We expressly disapproved *dictum* in *State v. Caproni,* 19 Or App 789, 792, n 1, 529 P2d 974 (1974), which had indicated that, without corroboration, an anonymous tip could not create a reasonable suspicion that a crime had been committed. We concluded that the information received by the officer was of a "sufficient quantity and quality to give rise to a reasonable suspicion that defendant was committing an offense." 37 Or App at 516.

Those cases do not expressly state that a tip must have some indicia of reliability in order for the police to act on it in stopping an individual under ORS 131.615(1). However, the United States Supreme Court has addressed that question in the context of the Fourth Amendment. In *Adams v. Williams,* 407 US 143, 92 S Ct 1921, 32 L Ed 2d 612 (1972), the Court upheld a *Terry* stop based on a tip from an informant. It held that the police officer was justified in relying on the informant's tip, because the tip had adequate indicia of reliability. Those indicia were: (1) the informant was known to the officer and had supplied information to him in the past;[3] (2) the informant came forth personally and gave information that was immediately verifiable at the scene; and (3) the informant subjected himself to the possibility of an arrest for

---

[3] The Court's reliance on this factor is curious, because the informant's one previous tip to the officer was not substantiated. *See Adams v. Williams, supra,* 407 US at 156-57 (Marshall, J., dissenting).

making a false report if the officer's investigation was fruitless. The Court stated that "[t]his is a stronger case than obtains in the case of an anonymous telephone tip." 407 US at 146. It further stated:

"In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response." 407 US at 147.

*Adams* establishes that there must be some indicia of reliability of an informant's tip in order to justify police in acting on it by making a stop. *See also United States v. Hensley, supra,* 469 US at 233 (wealth of detail concerning robbery provided by informant coupled with her admission of tangential participation in robbery had sufficient indicia of reliability to justify stop of the defendant). How much must be shown is unclear. It is reasonable to infer that less must be shown concerning the reliability of a tip in such a case than when the tip is the basis of an arrest or search warrant, because the informant's tip in *Adams* would not have survived the two-pronged *Aguilar/Spinelli*[4] analysis which the Court then employed to analyze such tips in the latter type of case.[5] 3 La Fave, *supra,* 994-1044, § 9.3 (1978).

■    Because ORS 131.615(1) was an effort to codify the rationale of *Terry v. Ohio,* we may presume that the legislature intended that the statute provide individuals with at least as

---

[4] That analysis was established in *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969).

[5] The Court has since abandoned the *Aguilar/Spinelli* analysis in favor of a "totality of the circumstances" analysis. *Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983).

much protection as the Fourth Amendment provides. We therefore hold that the anonymous tip in this case had to have had some indicia of reliability in order for it to have given rise to a reasonable suspicion that defendant had committed a crime.

■      The anonymous tip had no indicia of reliability. First, the caller did not identify herself. That a person providing information to the police identifies herself is not independently significant; what is significant is that, by doing so, she exposes herself to possible criminal and civil prosecution if her report is false and perhaps a charge of perjury if she later changes her story while testifying in the case. *State v. Montigue,* 288 Or 359, 605 P2d 656, *cert den* 449 US 846 (1980). Second, it is not clear how the caller received her information. *See State v. Taylor, supra; State v. Lindstrom, supra; State v. Fent, supra* (all involving tips based on personal observation). It cannot be inferred from the meager record that she personally observed what she reported.[6] Third, the trooper's personal observations did not corroborate the tip. He did not observe any erratic driving or speeding. If defendant's car was the one described by the informant, it had traveled eight miles in eleven minutes, which would suggest that it had not been speeding. Furthermore, it would seem less likely that someone would be driving intoxicated late Easter Sunday morning, as opposed to a Friday or Saturday night. That the anonymous informant had accurately described defendant's car is not a sufficient indication of reliability. *Whiteley v. Warden, supra.*

We are mindful that there are different classes of persons who provide information to the police, ranging from paid, confidential informants, who are themselves members of the criminal milieu, to ordinary citizens who are witnesses to or victims of crime. *State v. Villagran,* 294 Or 404, 409-10, 657 P2d 1223 (1983); *State v. Montigue, supra,* 288 Or at 363-65. Courts view those at the former end of the spectrum with the most suspicion and those at the latter end with the least. *See State v. Villagran, supra,* 294 Or at 409; *State v. Montigue, supra,* 288 Or at 363-65; 1 La Fave, *supra,* at 586-618, § 3.4. In

---

[6] The Oregon State Police log book entry concerning her call recites:

"Lady called from Selma stated that northbound on 199 is a brn/brn ford [sic] Escort, speeding and weaving on the hwy."

this case, there is no basis on which to infer that the anonymous caller was a so-called "citizen-informer" who had personally observed the crime, whom some courts deem presumptively reliable. *See* 1 La Fave, *supra,* 591, § 3.4.

A reasonable officer under the totality of the circumstances could not reasonably have concluded that defendant had committed or was committing a crime. The stop of defendant's vehicle therefore violated ORS 131.615(1). The evidence seized after that stop may not be used against her.[7] *State v. Valdez, supra,* 277 Or at 621.

Affirmed.

---

[7] We need not decide whether the stop violated either defendant's state or federal constitutional rights.