Argued and submitted November 26, 1987, affirmed September 16, 1987

# STATE OF OREGON,
*Respondent,*

*v.*

# ALFRED KENNETH ROZZELL,
*Appellant.*

(85-CR-0204-TM; CA A39290)

742 P2d 687

John P. Daugirda, Deputy Public Defender, Salem, argued

the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Charlene Woods, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant appeals his conviction for burglary in the first degree, ORS 164.225, assigning error to the trial court's denial of his motion to suppress evidence obtained by police officers following the stop of the automobile in which he was a passenger. We affirm.

At 10:15 a.m. on August 27, 1985, Brandon Cook, age 12, and his sister, Desalea, age 13, were at their home on Reason Road in Redmond. Both of their parents were at work in Prineville. The children saw two men in a yellow Ford stop the car in the driveway. A man wearing a long-sleeved red and black plaid shirt came to the door and rang the doorbell. The children did not answer the door. Five to ten minutes later, the two men drove to the house next door, where they both got out of the car. The children noticed that the companion of the man in the plaid shirt was wearing a turquoise shirt and that one of the men was carrying a rifle. They called their father in Prineville, who notified the police.

Officer Decker received a dispatch concerning a prowler or possible burglary in progress near a house on "Reeser" road, mistakenly called that by the dispatcher. Decker drove from Redmond to Reimer Road, the only road in the vicinity that he knew of with a name that was similar to "Reeser." He was followed by Officer Huskey in another patrol car. The dispatcher advised them that the suspects were two young white men, one with blond hair and the other with dark hair, in a yellow vehicle, possibly a Mustang. The dispatcher also informed the officers that the men had a rifle and that one of them was wearing a red and black plaid shirt. They drove several miles on Reimer Road but the addresses on that road did not coincide with the address given by the dispatcher. When they came to Reason Road, Huskey turned on to that road, while Decker continued on Reimer. Huskey saw a yellow Maverick with two young men inside turn from Reason onto Reimer. That car was only the third vehicle that the officers had seen in the area, and the only yellow one. Huskey called Decker to advise him that the yellow Maverick was on Reimer Road.

Decker turned on his flashing lights, and the Maverick stopped. The driver was a young white male with light hair and wearing a blue and white shirt. Defendant, who

was a passenger, had light brown hair and blue eyes and was wearing a red and black plaid shirt. There was a shotgun on the front seat between the two occupants. Decker asked for their identification and questioned them about their activities in the area. Defendant replied that they had approached two houses on Reason Road while looking for a friend named Eric Better, but that no one was home at either house.

In the meantime, Huskey was attempting to find the scene of the complaint but was unable to locate the Cook home before he came upon Decker and defendant, about one mile from the Cook home. He arrived about eight minutes after Decker had begun talking to defendant. About thirteen minutes after arriving at the scene of the stop, and after conferring with Decker, Huskey advised both defendant and the driver of their *Miranda* rights. *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). The driver consented to a search of the vehicle, but nothing was seized.

In the meantime, Deputy Aldred from the Deschutes County Sheriff's Office went to the Cook house, talked to the children and investigated the area surrounding the neighboring house, where he saw two sets of fresh footprints around the house leading to an open door. Aldred then went to the site of the stopped Maverick, arriving after defendant had been advised of his rights.

In response to Aldred's questioning, defendant and his companion said that they had been at the house but had not entered it. Aldred noticed that both suspects were wearing tennis shoes that could have produced the footprints that he had seen at the house. He asked both men if he could look at their shoes. Both showed the bottoms of their shoes to Aldred, who commented that the patterns were similar to the prints that he had observed at the house. Defendant then admitted that he had entered the residence with the intent to commit theft but did not find anything worth taking.

Defendant's first two assignments of error relate to the initial stop. He contends that Decker and Huskey lacked a reasonable suspicion that he had committed a crime. The question is whether a reasonable police officer, considering the totality of the circumstances, would have reasonably suspected that the person stopped had committed a crime. *State v. Black,* 80 Or App 12, 15, 721 P2d 842 (1986). In this case, the

record supports a reasonable suspicion. The officers had received a report of a possible burglary in progress by two young adult white men, one blond and the other brunet, traveling in a yellow car, possibly a Mustang, on "Reeser Road." After traveling on the wrong road for a short time, they came to Reason Road. Huskey decided to investigate it and saw a yellow Maverick with two occupants fitting the description given by the dispatcher. He radioed Decker that the car was traveling his way. Decker spotted the Maverick, which was one of only three cars that he had seen in the area and the only one that was similar to the one described in the dispatch. He noticed that the driver was a blond male and, after he saw the two young men "rubberneck" at the patrol car, he decided to stop them. The stop took place 15 minutes after he received the dispatch concerning the possible burglary in progress and was in the vicinity of the suspected crime.

The combined knowledge and observation of Huskey, Decker and the dispatcher provided a reasonable suspicion sufficient to support the stop. ORS 131.605(4); *State v. Lindstrom,* 37 Or App 513, 588 P2d 44 (1978). Defendant's reliance on *State v. Hageman,* 59 Or App 96, 650 P2d 175 (1982), is misplaced; the facts there have no resemblance to those in this case.

Defendant also argues that the detention and questioning of him was unreasonable and exceeded the scope of a lawful inquiry. A stop must be limited to a reasonable time, and the officer's inquiry must be limited to the immediate circumstances surrounding the officer's suspicion. ORS 131.615. Here, the officers limited their questioning to the recent activities of defendant and his companion as they might relate to the suspected burglary. As soon as Decker approached the stopped car, he noted that the men's clothing matched the description given him by the dispatcher and also observed the shotgun on the front seat. Those facts reinforced Decker's reasonable suspicion. His request for identification, making a records check and his general questioning concerning their activities in the area were justified. Their admission that they had been to two houses on Reason Road justified further inquiry, which did not take place until Huskey arrived on the scene eight minutes after the stop and advised the suspects of their *Miranda* rights. Thirteen minutes after the stop, Aldred arrived and questioned the men, resulting in

defendant's admission.

■    Defendant also contends that he did not voluntarily consent to Aldred's examination of his tennis shoes. The record establishes that defendant's consent was the result of his free will and was not the result of coercion. *State v. Smith,* 73 Or App 287, 293, 698 P2d 973 (1985).

■    Finally, defendant argues that he was in custody and that he had not yet been advised of his *Miranda* rights when he stated that he was looking for a friend on Reason Road; accordingly, he contends that his statement and all derivative evidence should have been suppressed. He relies on both the state and federal constitutions. Under the plurality opinion in *State v. Smith,* 301 Or 681, 701, 725 P2d 894 (1986), the Oregon Constitution does not require any advice of rights, at least until a person is in "full custody." Having the right to stop defendant, the officers had the right to detain him for a reasonable time to make a reasonable inquiry, during which time he was not free to leave. *State v. McConnville,* 67 Or App 601, 679 P2d 1373 (1984). Under the federal constitution, a person is not in custody for *Miranda* purposes until he is "subjected to restraints comparable to those associated with a formal arrest." *Berkemer v. McCarty,* 468 US 420, 440, 104 S Ct 3138, 82 L Ed 2d 317 (1984). Only a short time had elapsed between the stop and defendant's making the statement in question in response to Decker's initial general questioning. There is nothing in the record to indicate that at that time a reasonable person in defendant's situation would have understood himself to be under formal arrest. *See State v. Hackworth,* 69 Or App 358, 685 P2d 480 (1984).

Affirmed.