### State v. Ramsey
*[Cite as 7 AOA 459]*

*Case No. 89AP-1298*
*Franklin County, (10th)*
*Decided September 20, 1990*

Ronald J. O'Brien, City Attorney, James J. Fais and Thomas K. Lindsey, for Appellee.

Dennis W. McNamara, for Appellant.

REILLY, P.J.

Defendant, Steven M. Ramsey, appeals from his conviction and sentencing in the Franklin County Municipal Court for a violation of R.C. 4511.19(A)(1), operation of a motor vehicle while under the influence of alcohol.

Defendant asserts the following assignment of error:

"The trial court erred as a matter of law by overruling defendant's motion to dismiss, where the law enforcement officers had no probable cause to stop or to arrest defendant."

Defendant initially plead not guilty to the charge and filed a pretrial motion to dismiss the charges,[1] in which he maintained that the arresting officers lacked probable cause to stop or arrest him. The trial court held a hearing on the motion, at which time the prosecutor read the following stipulation of facts into the record:

1. "[T]he arresting officer received a radio dispatch that described in great detail the vehicle operated by a possible drunk driver, including the license plate number of that vehicle. The information had come to the Sheriff's dispatcher by means of a telephone call from a private citizen who left a name and phone number when she called.

2. "The arresting officer observed defendant's vehicle, which matched the license plate number and the description he had heard over the radio.

3. "[T]he officers turned and followed defendant's vehicle for approximately a quarter of a mile. Defendant committed no traffic violations while followed by the officers. Defendant drove into a parking place in a mobile home park next to the trailer where he resided.

4. "[T]he officers had turned on their beacon lights and stopped in front of the defendant's mobile home and approached him as he exited his vehicle.

5. "[T]he officers believed, from their observation and conversation with the defendant, that he was intoxicated. And they arrested him for a violation of 4511.,19(A)(1) and any other tickets that are pending."

The traffic ticket issued to defendant indicates that he was arrested at 9:45 p.m. No other evidence was presented to the trial court at the hearing on defendant's motion. The trial court

denied the motion and defendant plead no contest to the charge of operating a motor vehicle while under the influence of alcohol.

Defendant maintains that the officers lacked a reasonable suspicion to detain him as he exited his vehicle. The state maintains that the officers did not stop defendant within the meaning of *Terry v. Ohio* (1968), 392 U.S. 1, until they arrested him and that, if the detention was in fact a stop within the meaning of *Terry*, they had a reasonable suspicion to stop him in any case.

It is well-established that the Fourth Amendment applies to seizures of persons as well as property. The Supreme Court has recognized that not every encounter between police officers and citizens results in a seizure. *Terry, supra,* at 19, fn. 16. A "seizure" occurs under the Fourth Amendment "*** whenever a police officer accosts an individual and restrains his freedom to walk away. ***" *Id.* at 16. A seizure may be effected either by physical force or a show of authority. *United States v. Mendenhall* (1980), 446 U.S. 544, 553. To determine whether an individual has been "seized," a reviewing court must examine all the circumstances surrounding the incident. Examples of authoritative conduct include the threatening presence of several officers, the display of weapons, or the use of language or tone of voice. *Id.* at 554. An officer's subjective intent to detain a suspect is not controlling. Rather, the court must determine whether, under the circumstances, a reasonable person would feel free to leave. *Id.*

The state would characterize the encounter herein as mere police-citizen contact. This court has held, for example, that a seizure has not occurred where a plain clothes officer simply approaches a citizen in an airport and inquires about his travel plans. *State v. Hassey* (1983), 9 Ohio App. 3d 231. We do not find the encounter in this case to be as innocuous as that in *Hassey, supra.* Here, the officers turned on their flashers at night just as defendant was getting out of his car. Further, unlike the situation in *Hassey*, the officers were apparently in uniform. Had the officers pulled defendant over while he was still driving home, there would be no question that a seizure had taken place. *Delaware v. Prouse* (1979), 440 U.S. 648. Where the arresting officers followed the defendant home and approached him on his front lawn, the result is no different. A reasonable person would not feel free to walk away under these circumstances. Furthermore, it is clearly not in the state's interest to argue that a citizen has the right to ignore the approach of uniformed police officers after they have turned on the beacon lights atop their squad car. The officers in this case thus effected a seizure of defendant commonly known as an investigatory stop.

While an arrest may only be made upon a showing of probable cause, *Beck v. Ohio* (1964), 379 U.S. 89, an investigative stop, although still a seizure under the Fourth Amendment, may be made on less than probable cause. *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 881. In such cases, the Supreme Court has balanced the nature and extent of the detention against society's interest in law enforcement. *United States v. Place* (1983), 462 U.S. 696, 703.

Nevertheless, to meet the Fourth Amendment's central test of reasonableness, an investigatory stop must be supported by "*** a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Reid v. Georgia* (1980), 448 U.S. 438, 440. Such a stop is proper when "*** specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry, supra,* at 21. The police must have a reasonable suspicion that the particular individual being stopped is or was engaged in criminal activity. *United States v. Cortez* (1981), 449 U.S. 411, 418.

In evaluating these facts and inferences, however, the court must consider the totality of the surrounding circumstances. *State v. Freeman* (1980), 64 Ohio St. 2d 291, paragraph one of the syllabus. Specifically, the inferences drawn from the underlying facts are those which would be drawn by an experienced law enforcement officer. *Cortez, supra,* at 418. Finally, once the defendant has raised the issue, the burden shifts to the state to prove that the stop was supported by reasonable suspicion. *Xenia v. Wallace* (1988), 37 Ohio St. 3d 216, paragraph two of the syllabus.

Reasonable suspicion need not be based only on the officer's personal observations. *Adams v. Williams* (1972), 407 U.S. 143, 147. In forming a reasonable suspicion, an officer may rely on a printed flier or a radio bulletin. *Whiteley v. Warden, Wyoming State Penitentiary* (1971), 401 U.S. 560; *United States v. Hensley* (1985), 469 U.S. 221. Reliance on a radio bulletin is only appropriate, however, where the police issuing the bulletin possessed a reason-

able suspicion to justify the stop. *Hensley, supra,* at 233; *State v. Holmes* (1985), 28 Ohio App. 3d 12. Thus, the state must prove that the police department as a whole possessed the requisite degree of suspicion.

Reasonable suspicion may also be founded on information provided by persons outside the police department. In *Adams, supra,* at 147, the court held that informant's tips, while they very greatly in their value and reliability, may in certain cases produce reasonable suspicion. The court noted that "*** [o]ne simple rule will not cover every situation." *Id.* Each case must be decided on its own unique circumstances and any attendant indicia of reliability. *Id.* In *Adams,* the tip was received from a known informant and details of the tip could be immediately verified. In finding reasonable suspicion under these circumstances, the court noted that the facts presented a stronger case than might have resulted in the case of an anonymous telephone tip. *Id.* at 146.

Subsequently, in *Illinois v. Gates* (1983), 462 U.S. 213, the court addressed the issue of anonymous tips in the probable cause context. In *Gates,* the court abandoned the two-pronged test of *Aguilar v. Texas* (1964), 378 U.S. 108, and *Spinelli v. United States* (1969), 393 U.S. 410, in favor of a totality of the circumstances approach. While the strict test of *Aguilar* and *Spinelli* was abandoned, the court emphasized that the factors previously determinative under *Aguilar* were still highly relevant in a totality of the circumstances approach. These factors are the informant's veracity and reliability on one hand and his basis of knowledge on the other.

After the Supreme Court's decision in *Gates,* it was assumed that an anonymous tip would establish reasonable suspicion to make an investigatory stop under certain circumstances. The question remained as to what kind of indicia of reliability such a tip must possess to be constitutionally adequate. Specifically, it was unclear whether the corroboration of neutral or innocent tip details, such as a description of the suspect or his car, met the reasonable suspicion standard. Compare *United States v. McBride* (C.A. 8, 1986), 801 F.2d 1045, and *State v. Black* (Or. App. 1986), 721 P.2d 842. Following oral argument in this case, the Supreme Court took a step towards answering this question in *Alabama v. White* (1990), 110 S.Ct. 2412.

In *White,* the police received an anonymous telephone tip identifying the defendant and stating that she would be leaving her apartment at a certain time to deliver cocaine to a nearby motel. The caller also included a description of the defendant's car. The court indicated that this tip, standing alone, lacked sufficient indicia of reliability and thus could not establish reasonable suspicion to make an investigatory stop without "something more." *Id.* at 2416.

Leaving aside for the moment the fact that the caller in this case identified herself, it may be observed that the content of the tip in this case provides less indicia of reliability than the tips considered in *Gates* and *White, supra.* It "*** provides virtually nothing from which one might conclude that [the caller] is either honest or [her] information reliable; likewise, the [tip] gives absolutely no indication of the basis for the [caller's] predictions regarding ***" defendant's intoxicated state. *Gates, supra,* at 227. This tip actually contains considerably less detail than the tip in *White.* The caller in this case simply described the suspect vehicle, although the particularity of this description is not in the record, and presumably told the police what direction it was headed, although this too is not in the record. The record in this case actually provides very little detail from which the reasonableness of the stop may be reviewed. Finally, as in *White,* the caller also stated in a rather conclusory manner that the suspect was engaged in criminal activity.

A tip which standing alone would lack sufficient indicia of reliability may establish reasonable suspicion to make an investigatory stop if it is sufficiently corroborated through independent police work. In *White,* the police observed the defendant leave her apartment at the predicted time, enter the described car, and drive in the direction of a nearby motel as predicted by the anonymous informant. The court emphasized that the tip "*** contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *Id.* at 2417, quoting *Gates, supra,* at 245. In *White,* the informant predicted both the suspect's time of departure and her destination. Further, both of these facts were corroborated by the police before the stop was made. The court gave virtually no weight to the fact that the informant identified a specific suspect and alleged that the suspect was engaged in criminal activities. Unlike predictions of future behavior, these facts

existed at the time of the call and do not demonstrate a special familiarity with the suspect's affairs. *Id.* at 2417.

It is therefore clear that the simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop. Had the tip in this case been anonymous, the tip even as corroborated would not exhibit sufficient indicia of reliability to justify an investigatory stop. The information provided is less reliable than the tip in *White*. Moreover, the tip simply identified defendant's car and presumably its location. It did not purport to predict the defendant's future behavior and did not give the police an opportunity to confirm such predictions.

The issue now clearly presented to this court is whether an otherwise insufficient tip such as this one is invested with sufficient indicia of reliability by the mere fact that the caller left her name and phone number. Such a tipster is often described as a citizen informant because these tips have characteristics different from those provided by professional police informants or anonymous informants. The reliability of police informants is often established by their "track-record" with the police prior to the tip in question. As a citizen-informant may have never reported a crime before, this analysis is generally inapplicable. Citizen-informants also rarely have access to inside information about a suspect and usually simply report their observations. As a result, some courts have held that a citizen-informant who is the victim of or witness to a crime is presumed reliable. *Commonwealth v. Weidenmoyer* (P.A. 1988), 539 A. 2d 1291; *State v. Ege* (Neb. 1988), 420 N.W.2d 305.

In each of these cases, however, the court required that the witness or victim relate the basis for their knowledge or observations. This is consistent with the totality of the circumstances approach as it satisfies the basis of knowledge factor. Given this information, the police can conclude that the caller is indeed a citi-zen-informant and thus have reason to believe that the caller is honest as well.

In this case, we cannot find from the record before us that the caller provided any information of this kind. Moreover, while one may presume that a citizen-informant is reliable, it is quite another thing to presume that an identi-fied caller is actually a citizen-informant. As the Washington Supreme Court noted in *State v. Sieler* (1980), 621 P.2d 1272, 1275:

> "The reliability of an anonymous telephone informant is not significantly different from the reliability of a named but unknown telephone informant. Such an informant could easily fabricate an alias, and thereby remain, like an anonymous informant, unidentifiable."

Reasonable suspicion is dependent upon both the content of the information provided and its degree of reliability. *White, supra,* at 2416. Both the quantity of information available and its quality are examined under a totality of the circumstances approach. *Id.* The tip in this case plainly lacks sufficient content or quantity of information to provide any indicia of reliability. Nor was the meager information provided corroborated in any meaningful way. Merely confirming that the identified suspect actually exists is plainly insufficient, for any tip which fails to adequately describe a suspect cannot be acted upon at all. Were it otherwise, a prankster by simply picking up a phone could easily subject another to the intrusion of an investigatory stop. The Fourth Amendment surely requires more than this. Specifically, where quantity is lacking, the quality or reliability of a tip may be established by corroborating details of the tip relating to "\*\*\* future actions of third parties ordinarily not easily predicted." *White, supra,* at 2417, quoting *Gates, supra,* at 245.

Finally, the fact that the caller left her name and phone number does not significantly add to the reliability of the tip in this case. Unlike a crime scene report, the police did not talk to the citizen-informant personally, nor did they even know for certain that a crime had been committed as is the case in the citizen-eyewitness cases. Moreover, there is no indication in the record that the police even attempted to verify the caller's identity. Reliability may be established in the case of an identified informant by the mere fact that the informant is probably aware of the penalties associated with making a false police report. In this case, however, there is no indication in the record that the informant could actually be identified in the future should the report turn out to be maliciously made.

The tip in this case lacks sufficient information to warrant an investigatory stop. Under the totality of the circumstances approach, a tip, which otherwise might be insufficient, will

establish reasonable suspicion if it is sufficiently reliable. Here, the tip has no more reliability than an anonymous phone tip. The informant provided no basis for her knowledge, nor did she demonstrate any special familiarity with defendant's affairs. Finally, the mere fact that the telephone caller identified herself does not distinguish this case from those involving anonymous informants. A presumption that a person reporting a previously unknown crime over the phone is honest and reliable simply because that person also leaves a name and phone number is not reasonable under these circumstances. This is not to say that the tip did not warrant investigation. On the contrary, "*** [s]ome tips, completely lacking in indicia of reliability ***," will "*** require further investigation before a forcible stop of a suspect would be authorized." *Adams, supra,* at 147.

This was such a tip and the police did in fact attempt further investigation. When that investigation proved fruitless, however, they nevertheless proceeded to stop the defendant. The simple fact that the officer's personal observations failed to confirm the caller's allegation of drunk driving adequately demonstrates that their suspicion was not reasonable.

Defendant's assignment of error is well-taken and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

YOUNG and KERN, J.J., concur.

KERN, J., retired, of the Montgomery County Court of Common Pleas, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

---

[1] Although defendant's motion was improperly titled as one to dismiss rather than one to suppress evidence illegally obtained, both counsel and the trial court treated it as a motion to suppress evidence throughout the proceedings. Thus, *State v. F.O.E. Aerie 2295* (1988), 38 Ohio St. 3d 53, is inapplicable. See *State v. Good* (1987), 37 Ohio App. 3d 174.