STATE v. FRED L. KREMER.

239 N. W. 2d 476.

February 27, 1976—No. 44728.

C. *Paul Jones,* State Public Defender, and *Peter Van Bergen,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,*

County Attorney, and *Steven C. DeCoster*, Assistant County Attorney, for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Fred L. Kremer (Kremer) appeals from his convictions of coercion and felonious theft. We also review the trial court's order denying postconviction relief. Kremer challenges the legality of the basis for the court's issuing the type of search warrant which it did, but presents no record to this court of ever having raised this question in the lower court. Affirmed.

Kremer's conviction arises out of an extortion scheme involving the wife of a supermarket owner, who received a telephone call on February 23, 1973, informing her that she had won a prize consisting in part of tickets to a play. While she was attending the play, her husband was telephoned and instructed to remove money from his supermarket's safe and leave it in his car, under threat of harm being inflicted upon his wife if he did not cooperate.

On March 6, 1973, Sergeant Robert Hark of the Washington County sheriff's office was told by a Stillwater police officer that one Steven Fisher, who was under arrest for being A.W.O.L., had some information for him. The gist of Fisher's information was that, while visiting Kremer's home in Stillwater sometime around February 1973, he overheard a conversation among Kremer and two other men concerning a plan which bore a striking resemblance to the plot carried out against the supermarket owner and his wife, described above. Surveillance of the husband and wife was to be accomplished by the use of walkie-talkies. The money thus obtained was to be used to buy drugs in California. The facts surrounding the extortion scheme had not yet been revealed to the media, so Hark had to consult the Maplewood Police Department (the supermarket owner and his wife

resided in Maplewood) to learn that a plan such as Fisher described had recently been executed.

Acting on Fisher's information, as well as that of a confidential reliable informant who stated that he had observed certain controlled substances at Kremer's residence as recently as 3 days earlier, Hark obtained a warrant for the search of Kremer's home. The affidavit in support of the search warrant alleged that both a nighttime search and an unannounced entry were necessary, and the county court judge issued a warrant for a search of this type. Accordingly, Officer Hark, accompanied by two other police officers, arrived at Kremer's home at 11:30 p. m. on March 6 and, initially unable to open the door, knocked out the door's glass portion, reached inside, and opened it. Among the items which were seized from the house were three walkie-talkies on the same frequency, two ticket receipts in Kremer's name reserving passage from the Twin Cities to Los Angeles dated February 24, 1973, a shotgun, and controlled substances.

These items were admitted into evidence over Kremer's objection, which was based on a general allegation of lack of probable cause for the issuance of the search warrant. The transcripts of the Rasmussen hearing and the trial on the merits revealed that Kremer did not assert his present challenges to the warrant's validity at either of these proceedings. In the course of presenting his argument at the Rasmussen hearing that there was no probable cause for the warrant's issuance, Kremer's counsel did aver in passing that the requisite probable cause was particularly lacking in view of the fact that a nighttime execution was contemplated. As Kremer's counsel conceded at oral argument, the "no-knock" aspect of the warrant and search was never even alluded to at the Rasmussen hearing or the trial.

Kremer originally filed an appeal to this court from the judgment below on November 14, 1973. By order dated November 14, 1974, this court stayed proceedings on the appeal, pending a remand of the case for an evidentiary hearing pursuant to the

postconviction remedy statutes, Minn. St. 590.01, et seq. Following that hearing, the lower court denied relief.

Kremer's motion for a remand for a postconviction hearing does not challenge the validity of the basis for issuing the warrant. Since there is no transcript of the postconviction evidentiary hearing, we cannot discern whether the present challenges were raised there. However, in light of both the petition for postconviction relief which Kremer filed with the district court and the district court's order denying postconviction relief, a compelling inference can be drawn that Kremer did *not* make such claims. The sole specific basis for relief alleged in the petition is that one Edward Kido who, subsequent to Kremer's conviction, pleaded guilty and was sentenced for the same offense executed an affidavit stating that Kremer had no connection with the offense, and that he (Kido) desired to give testimony to this effect. The order denying the petition for postconviction relief focuses only on this new evidence presented by Kido and indicates in no uncertain terms that the court below found Kido's affidavit completely trumped up and falsified.[1]

In short, nothing in the record indicates that Kremer's present claims were raised at any earlier stage of these protracted criminal proceedings. At oral argument, the only prior appearance of these issues on the record to which Kremer's counsel could point was the passing reference to the stiffer probable-cause requirements for nighttime searches at the Rasmussen hearing mentioned above. Counsel urged, rather, that since Kremer's contentions present important constitutional issues, this court should resolve those issues despite Kremer's failure to properly preserve them below. However, the fundamental rule

---

[1] Conclusion of law No. 4 read: "* * * [T]his court is unwilling to allow its gullibility to be tested and its processes to be subverted by the type of patent manipulation herein disclosed, which if allowed would permit the last of joint defendants separately tried to make a favorable plea agreement, and then to 'exonerate' those co-defendants already found guilty after a fair trial."

that this court will not decide issues which are raised for the first time on appeal, see 1B Dunnell, Dig. (3 ed.) § 384, has not been subject to an exception where the tardily raised errors consist of allegedly unconstitutional criminal procedures. See, e. g., State v. Bosnich, 273 Minn. 553, 142 N. W. 2d 63, certiorari denied, 385 U. S. 978, 87 S. Ct. 522, 17 L. ed. 2d 440 (1966). In fact, in State v. LaBarre, 292 Minn. 228, 195 N. W. 2d 435 (1972), this court ruled that since defendant's contentions regarding the scope of the search and the justification for a nighttime search—the identical issue raised in the instant case—were raised for the first time on appeal, these issues were "not properly presented under soundly based and settled rules limiting our scope of review to issues raised at trial." 292 Minn. 237, 195 N. W. 2d 441, citing State v. Taylor, 270 Minn. 333, 133 N. W. 2d 828 (1965).[2]

Affirmed.

[2] We note that Kremer was discharged from custody on March 13, 1974.