## State of Vermont v. Steven A. Taylor

[491 A.2d 1034]

No. 162-81

Present: Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed March 8, 1985

438

Robert M. Butterfield, Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

Bruce Bjornlund, Waterbury, for Defendant-Appellant.

Underwood, J. Defendant appeals his conviction, after a trial by jury, of taking a wild deer during closed season, a violation of 10 V.S.A. § 4745. Specifically, the defendant claims that the actions of the game wardens violated his rights under the federal and Vermont constitutions, and that the trial court erred in denying his motion for a judgment of acquittal. We disagree and affirm.

A brief review of the facts indicates that the defendant was a passenger in an automobile that was subjected to a stop by two deputy game wardens. The game wardens had been investigating reports of nighttime deer hunting, and had stopped the automobile to inquire about a nearby rifle shot they had just heard. The game wardens asked questions of the occupants of the automobile. They examined a .300 magnum caliber rifle and eleven cartridges owned by the defendant. Although it could not be characterized as a "smoking gun," the wardens, after smelling the muzzle and noting the barrel was warm to the touch, were of the opinion it had just been fired and arrested the defendant for taking a wild deer out of season. Additional facts are set out as required in later portions of this opinion.

In a pretrial motion, the defendant moved to suppress the introduction into evidence of his rifle, eleven cartridges and a hunting knife allegedly seized from him by the game wardens, as well as any statements or admissions made by him to the game wardens on the night in question. After an evidentiary hearing on defendant's motion to suppress, the trial court issued written findings of fact and conclusions of law, and denied the motion.

## I.

Insofar as constitutional issues are concerned, we find the defendant's brief in this case to be inadequate. It contains no specific grounds for the claim that his constitutional rights were violated by the actions of the game wardens. In briefing cases brought before this Court, it is the obligation of the parties to present, in a clear and concise manner, those legal and factual issues which they would have us address. The burden for proper presentation of issues raised upon appeal is with the appellant, and of those issues raised upon cross-appeal, with the appellee. It is not the proper role of this Court to foretell, through the art of divination, those issues which the parties deem appropriate for resolution. It is only in the rare and extraordinary case that this Court will consider, sua sponte, issues not properly raised on appeal before us. See, e.g., *State v. Bergerson,* 144 Vt. 200, 203–04, 475 A.2d 1071, 1074 (1984). This is not such a case.

Even if we were to consider all of the defendant's federal and state constitutional issues to be properly raised, they are clearly inadequately briefed. The legal briefing by the defendant provides no support whatsoever for his federal and state constitutional claims. It is not the proper role of this Court to act as an advocate for either of the parties before us. While we will scrutinize the legal arguments and the authorities submitted by the parties, and will supplement them as necessary with our own research, we will not construct an appellate case for either party out of whole cloth. In view of our determination that the defendant neither adequately raised nor supported his federal or state constitutional claims, we will not consider them upon appeal. *Buttura v. Buttura,* 143 Vt. 95, 98, 463 A.2d 229, 230 (1983) ; *Hill-Martin Corp. v. Alling,* 137 Vt. 432, 433–34, 407 A.2d 168, 169 (1979) ; V.R.A.P. 28.

In declining to address the federal and state constitutional issues that were not adequately raised or briefed in the instant case, we do not propose to abridge the right of any party to appeal his or her case for final resolution by this Court, as provided by law. However, we cannot, in an era of increasing demands upon finite judicial resources, give full consideration to cases frivolously appealed or inadequately briefed. Such cases would require extensive work on the part of this Court in or-

der to make up for the shortcomings of the parties involved. The subsequent delays in the consideration and resolution of properly raised and briefed appeals cannot be tolerated.

## II.

### A.

The defendant contends that the trial court had insufficient evidence to support its conclusion that the game wardens had a reasonable and articulable suspicion that the defendant had been involved in criminal activity. In spite of our holding above, that the defendant failed to raise or adequately brief a claim that his constitutional rights under the Fourth Amendment were violated, we must address the defendant's claim that there was insufficient evidence for the trial court to find that the game wardens had a reasonable and articulable suspicion that the defendant had been involved in recent criminal activity. To do so, we must, perforce, cite Fourth Amendment cases for authority.

Taking the evidence in the light most favorable to the State, as the prevailing party, State v. Mecier, 126 Vt. 260, 262, 227 A.2d 298, 299 (1967), the following facts make up the opening scenario. After two reports on the evening of November, 22, 1980, of gunshots emanating from a field between the residences of Robbins and Howland in Lyndon, the chief warden and two of his deputies arranged a stakeout about 7:45 p.m. The deputy wardens sat in a cruiser parked in the driveway to the Robbins' residence. The chief warden drove about three miles up Pond Road to a point where another highway intersected with it

At about 10:10 p.m. the two deputy wardens, while parked in the Robbins' driveway, heard an extremely loud discharge from a high-powered rifle, fired at very close range. Within seconds after the shot they observed the headlights of a small station wagon coming toward them on Pond Road. The deputy wardens turned up their headlights, activated the flashing blue light on top of their cruiser and drove out to intercept the oncoming vehicle, which came to an immediate stop.

We find that there was ample evidence to support the trial court's conclusion that the wardens' stop of the automo-

bile, in which the defendant was riding, was proper. We do not have here, in the case at bar, an "inchoate and unparticularized suspicion or 'hunch,'" on the part of the officers who initiated the stop, as in *Terry* v. *Ohio*, 392 U.S. 1 (1968), but rather a reasonably articulable suspicion justifying an investigatory stop. See, e.g., *Berkemer* v. *McCarty*, — U.S. —, —, 104 S. Ct. 3138, 3150 (1984); *United States* v. *Cortez*, 449 U.S. 411, 417–18 (1981).

## B.

Defendant, relying upon *State* v. *Angelucci*, 135 Vt. 43, 46–47, 373 A.2d 834, 835–36 (1977), also argues that because the State's case is founded primarily on circumstantial evidence and did not exclude every reasonable hypothesis except that the defendant was guilty, the State had failed in its burden of proof. At best, he claims the State's evidence raises only a suspicion of guilt on the part of the defendant and that that is insufficient to establish the elements of the crime set forth in 10 V.S.A. § 4745. Therefore, defendant asks us to strike the verdict and judgment of guilty and enter a judgment of acquittal.

Defendant's reliance on *Angelucci* is misplaced. The circumstantial evidence test reiterated in *Angelucci* was overruled by our decision in *State* v. *Derouchie*, 140 Vt. 437, 440 A.2d 146 (1981). See *State* v. *Neale*, 145 Vt. 423, 433, 491 A.2d 1025, 1029 (1985). As recently as *State* v. *Debanville*, 142 Vt. 512, 515–16, 457 A.2d 650, 652 (1983), we were asked to reconsider our holding in *Derouchie* and we declined to do so.

> As we said in *Derouchie* and reaffirm here, "[t]here is only one standard of proof for criminal convictions, whether the evidence is direct, circumstantial, or a combination of both. The prosecution has the burden of proving each element of a crime beyond a reasonable doubt."

*State* v. *Debanville, supra,* 142 Vt. at 516, 457 A.2d at 652.

The trial court, on motion of a defendant, shall order the entry of judgment of acquittal of the offense charged in an information, after the evidence on either side is closed, "if the evidence is insufficient to sustain a conviction of such offense . . . ." V.R.Cr.P. 29(a). We have said "[i]n ruling on a motion for judgment of acquittal, the standard is whether the

evidence, when viewed in the light most favorable to the State, is sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State* v. *LeBeau,* 144 Vt. 315, 318, 476 A.2d 128, 129 (1984) (citing *State* v. *Lupien,* 143 Vt. 378, 466 A.2d 1172 (1983)).

In addition to the facts previously recited in this opinion, the evidence, when taken in the light most favorable to the State as the prevailing party, reveals these further facts.

At about 8:30 p.m., this very same evening, while responding to a report from Mrs. Robbins of hearing gunshots, the chief warden examined an area of a field near her residence and found no evidence of deer hunting.

About 10:30 p.m. that evening, after stopping the defendant and his companion, questioning them and examining the rifle and cartridges, all three of the wardens gathered at the same spot in the Robbins' field which the chief warden had searched at 8:30 p.m. This time they observed deer tracks and blood and deer hair in the snow. There was evidence that a deer had been knocked down, and hair and blood lay in the footprints made by the chief warden earlier that evening.

The chief warden was then able to discern the path of the bullet by the stria in the snow. When he sifted the snow through his fingers he came upon a portion of the copper jacket from a high-powered rifle bullet. In his opinion it was from a cartridge of the same type as the eleven cartridges possessed by the defendant.

Another witness, Herman Howland, neighbor to the Robbins, testified that he and his wife were playing cards that evening while seated at a table in front of a picture window. It was a bright moonlit night with snow on the ground. About 10:00 p.m. they watched as two deer were walking about in a field across the road from their house. As the deer disappeared from their vision behind the Howlands' barn, Mr. Howland heard a car approach and slow down. He opened the outside door to look out and could see the tail lights of a "smallish" car and then saw flame come out of a gun barrel and heard a shot. As he ran from his house out into the road, he saw two deer running down the length of the field and disappear into the woods. He also saw the car then spin its wheels and start off down the road in the direction of the Robbins' residence. Mr. Howland observed the flashing blue light of the cruiser just as the brake-

lights of the fleeing car went on. He saw no other car from the time this car drove away from his place until he saw the flashing blue light on top of the wardens' cruiser.

There was ample evidence in this case for a jury, composed of reasonable men and women, as the trier of fact, to find the defendant guilty beyond a reasonable doubt of a violation of 10 V.S.A. § 4745.

There was no error in the trial court's denial of defendant's motion for a judgment of acquittal.

*Affirmed.*