**STATE of Minnesota, Respondent,**

v.

**Cal S. SORENSON, Appellant.**

**No. C9–88–225.**

Court of Appeals of Minnesota.

Oct. 11, 1988.

Review Granted Dec. 1, 1988.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Dennis M. Sobolik, Kittson Co. Atty., Brink, Sobolik, Severson, Vroom & Malm, P.A., Hallock, for respondent.

Bruce Nielsen, Lancaster, for appellant.

Considered and decided by SCHUMACHER, P.J., and RANDALL and MULALLY *, JJ., without oral argument.

## OPINION

SCHUMACHER, Judge.

Appellant Cal S. Sorenson appeals from a conviction for transporting a loaded, uncased firearm in a motor vehicle, in violation of Minn.Stat. § 97B.045(1) (1986). Appellant contends a conservation officer's search of his private property was unconstitutional, and that the fruits of this search should have been suppressed by the trial court. We affirm.

## FACTS

On November 9, 1987, state conservation officer Brian Buria was patrolling Caribou Township in Kittson County when he observed a substantial amount of vehicle traffic coming from and going to appellant Cal S. Sorenson's hunting camp. Officer Buria decided to enter the camp and investigate whether any game or fish laws were being violated, and particularly whether all hunters had valid hunting licenses.

Appellant's camp was posted with no trespassing signs, and a gated fence blocked the road leading to the camp. Offi-

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

cer Buria opened the gate and upon proceeding into the camp found a deer hanging from a meat pole. After examining the deer and discovering that it was properly tagged, Officer Buria noticed a deer stand in an adjoining field which appeared to exceed height restrictions. While on his way to examine the deer stand, Officer Buria heard appellant approaching in a vehicle. Officer Buria motioned for appellant to stop and observed that appellant had a loaded, uncased gun in the stopped vehicle. Officer Buria issued appellant a citation for violating Minn.Stat. § 97B.045(1) (1986). Appellant appeals from his conviction on this charge.

## ISSUE

May a state conservation officer, in the performance of his duties, enter private land without first establishing probable cause to believe a violation of the law either has occurred, or is occurring?

## ANALYSIS

Minnesota conservation officers are given broad statutory authority to "enter *any* land" to carry out the duties and functions of the fish and wildlife division of the Department of Natural Resources. Minn. Stat. § 97A.205(2) (Supp.1987) (emphasis added). The trial court held that this statute authorized Officer Buria to enter appellant's private property without first establishing probable cause to believe a violation of the state's game laws had occurred. Appellant contends that this statute, as interpreted by the trial court, is an unconstitutional infringement of the protections guaranteed by the fourth and fourteenth amendments to the United States Constitution and article one, sections two and ten of the Minnesota Constitution.

The Minnesota Supreme Court has ruled that Minn.Stat. § 97.50, subd. 2 (Supp. 1985), the predecessor of Minn.Stat. § 97A.205(2) (Supp.1987), authorizes warrantless entry upon private land by conservation officers. *State v. Hoagland,* 270 N.W.2d 778 (Minn.1978). However, in *Hoagland,* the court found that the officers had probable cause to believe a game

law violation had occurred and did not address the issue of whether conservation officers, without probable cause, could make warrantless searches upon private lands.

■ In the present case, the only information available to Officer Buria, prior to his entry upon appellant's property, was that a hunting camp was located on appellant's property, increased amounts of traffic were entering and leaving appellant's property, and it was deer hunting season. This information, while supporting Buria's conclusion that hunting was occurring on appellant's land, did not give Buria probable cause to believe a game law violation had occurred. Consequently, we are faced with the issue of determining whether conservation officers need probable cause prior to making warrantless searches on private lands.

■ In order for appellant to establish that the conservation officer's presence on his property was an unreasonable search and constitutionally prohibited, appellant must first establish that he had a "constitutionally protected reasonable expectation of privacy" in the area searched. *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967). The activities engaged in by the conservation officer while on appellant's property took place entirely in open fields. Consequently, appellant's fourth amendment rights were not violated, because the special protections accorded by the fourth amendment do not extend to open fields. *Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924).

> Because open fields are accessible to the public and the police in ways that a home, office, or commercial structure would not be, and because fences or "No Trespassing" signs do not effectively bar the public from viewing open fields, the asserted expectation of privacy in open fields is not one that society recognizes as reasonable.

*Oliver v. United States,* 466 U.S. 170, 171, 104 S.Ct. 1735, 1737, 80 L.Ed.2d 214 (1984).

■ We reject appellant's contention that this case does not deal solely with a search of "open fields," but also involves a search of the "curtilage" surrounding appellant's cabin. Fourth amendment protection extends both to the home and to the curtilage immediately surrounding the home. The term curtilage has been defined to mean:

The area to which extends the intimate activity associated with the "sanctity of a man's home and the privacies of life." Oliver, 466 U.S. at 180, 104 S.Ct. at 1742 (citing Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746).

■ Appellant's arrest, which occurred a few hundred yards away from appellant's cabin, was not within the cabin's curtilage. See United States v. Eng, 753 F.2d 683, 686 (8th Cir.1985) (marijuana patch 325 yards from home was outside curtilage). Appellant's contention that, while the arrest may have occurred outside the curtilage, the arrest was the unlawful fruit of the officer's search within the curtilage, is without merit. The officer's investigation within the area immediately surrounding the cabin was of a cursory nature. The officer did not investigate the area immediately surrounding the cabin. The only activity conducted near the cabin was the officer's inspection of a deer to see that it was properly tagged.

■ Appellant's claims based on violation of the state constitution were not brought to the attention of the trial court and cannot be raised for the first time on appeal. Nelson v. Nelson, 291 Minn. 496, 497, 189 N.W.2d 413, 415 (1971).

## DECISION

For the reasons stated, the judgment of the trial court is affirmed.

AFFIRMED.

RANDALL, J., dissents.

RANDALL, Judge, dissenting.

I respectfully dissent. The majority does correctly frame the issue where it states:

This information, while supporting Buria's conclusion that hunting was occurring on appellant's land, did not give Buria probable cause to believe a game law violation had occurred. Consequently, we are faced with the issue of determining whether conservation officers need probable cause prior to making warrantless searches on private lands.

The majority then finds that somehow conservation officers are an exception to the general laws governing search and seizure. I respectfully disagree and find that they are not.

The issues as I see them lie in four areas: (1) warrantless searches, (2) articulable suspicion to stop, (3) the force and meaning of Minn.Stat. § 97A.205(2) (Supp.1987), (4) the applicability, if any, of the "open fields" exception.

### I.

*Warrantless searches*

The State of Minnesota concedes, and the majority acknowledges, that Officer Buria did not, prior to entering appellant's land and stopping him, have knowledge leading to the level of probable cause to believe that a game law violation had occurred. It is time-honored law that searches conducted without a warrant issued upon probable cause are, per se, unreasonable and subject only to certain precise exceptions. State v. Hanley, 363 N.W.2d 735, 738 (Minn.1985).

The state does not claim any of the possible exceptions open to them such as warrantless search but pursuant to consent,[1] or a warrantless search but incident to a lawful arrest.[2] Since the state concedes no

---

1. "It is equally well-settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973)." *Hanley* at 738.

2. "We need not decide whether the initial observations of the officers, before they stopped the truck, *gave them probable cause* to believe that they had witnessed a violation of the statute, something which *would have justified both an arrest and a warrantless search* under the motor vehicle exception to the warrant requirement."

probable cause for a warrantless search, this avenue to sustain the seizure of the uncased weapon, and thus the conviction, is closed to them.

## II.

### *Articulable suspicion to stop*

This issue comes closest to the actual fact situation. Even if the state had less than the necessary probable cause to arrest without a warrant (a valid warrantless arrest would lead to a valid search "incident to lawful arrest") and then lawfully search appellant, or less than enough probable cause to legally search appellant without a warrant and then use the fruits of that search to justify an arrest, the state can use the fruits of this stop and search if the weapon was in plain sight and seized after a lawful stop premised on articulable suspicion that appellant was suspected of criminal activity. In order to make such a stop, "the detaining officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).[3]

*Cortez*, has been cited by Minnesota appellate courts several times with approval. *Appelgate v. Commissioner of Public Safety*, 402 N.W.2d 106 (Minn.1987); *State v. Mallory*, 337 N.W.2d 391 (Minn.1983).

Once appellant's vehicle was stopped, the uncased weapon was in plain view, so a "plain view" seizure would have been permissible if the stop was justified. But on the articulable suspicion prong, to justify the stop, the state fails. The facts do not

justify, nor does the state claim that, at the time Officer Buria stopped appellant's vehicle, he had any particularized and objective basis for suspecting that appellant was engaged in criminal activity. *Id.*

Although the majority points out that the officer, once on appellant's land, claimed to have seen a deerstand in an adjoining field which possibly exceeded the legal height limit, there is no claim by the state that Officer Buria had a particularized belief that appellant was the person suspected of the criminal activity of erecting that possibly unlawful deerstand. The officer did not know when viewing the deerstand that it was even on appellant's land, or in any way under his care or control. Appellant was not coming directly from the stand; and Buria does not claim that he specifically stopped appellant suspecting that the stand was his. Buria's stop of appellant was based on classic "curiosity." *See Marben v. State*, 294 N.W.2d 697 (Minn.1980), (quoting *People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975)):

> All that is required is that the stop not be the product of mere whim, caprice, or idle curiosity.

*Id. See e.g. Stark v. Perpich*, 590 F.Supp. 1057, 1059 (D.Minn.1984) (absent articulable suspicion of unlawful conduct, use of roving patrols to stop vehicles at random is unconstitutional.)

It is settled law in Minnesota and other jurisdictions that game wardens, like all peace officers, need at least articulable suspicion for momentary stops and minimally intrusive detention.[4]

---

*State v. Richards*, 284 N.W.2d 549, 551 (Minn. 1979) (emphasis added).

**3.** Based on footprints in the desert, knowledge of smuggling of illegal aliens, vehicle tracks, and other identifiable bits and pieces of information, border patrol officers had a particularized and objective basis for suspecting the person stopped of criminal activity. Thus the supreme court reversed, finding that the border patrol officers reasonably surmised that the vehicle and the occupants they stopped were engaged in criminal activity and therefore the stop and subsequent seizure and arrest were lawful. *Cortez*, 449 U.S. at 421, 101 S.Ct. at 696.

**4.** Numerous jurisdictions, in addition to Minnesota, have applied fourth amendment standards to searches of vehicles involved in suspected game law violations. *U.S. v. Munoz*, 701 F.2d 1293 (9th Cir.1983) (holding articulable suspicion required for game warden to make roving vehicle stops to check for wood cutting permits and game violations; *United States v. Stricklin*, 534 F.2d 1386 (10th Cir.), *cert. denied*, 429 U.S. 831, 97 S.Ct. 92, 50 L.Ed.2d 95 (1976); *State v. Odam*, 40 Or.App. 551, 595 P.2d 1277 (1979) (articulable suspicion required to stop vehicle for suspicion of it containing unlawful game); *Schultz v. State*, 437 So.2d 670 (Ala.Ct.App. 1983); *State v. Tourtillott*, 289 Or. 845, 618 P.2d

We do not need to decide this issue because (a) they clearly had reasonable grounds for stopping the truck for minimally intrusive investigative questions, *see Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), and *State v. McKinley,* 305 Minn. 297, 232 N.W.2d 906 (1975).

*Richards* at 551. A careful reading of *Richards* discloses nothing unique to the enforcement of game laws, as opposed to the enforcement of others. For valid stops, and/or searches, and/or arrests, *Richards* discusses the proper methods: 1) pursuant to probable cause; 2) pursuant to a lawful stop based on articulable suspicion; 3) pursuant to a violation of a law committed within the sight of the officer. None of these three are present in this case.

The United States Supreme Court case of *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) is instructive. *Prouse* tracks the case history of the fourth amendment, auto stops, and seizure of evidence from that auto. *Prouse* (absent a narrow exception carved out for United States border patrols checking for illegal aliens near international borders, an exception not applicable here), held that law enforcement officers need at least articulable and reasonable suspicion that the motorist is engaged in some type of illegal activity before the stop can produce evidence that can be properly admitted in a criminal trial. *Id.* at 660, 99 S.Ct. at 1399.

## III.

### *Meaning of Minn.Stat. § 97A.205(2)*

The applicable statute states as follows: An enforcement officer is authorized to:
(1) execute and serve court issued warrants and processes relating to wild animals, wild rice, public waters, water pol-lution, conservation, and use of water, in the same manner as a constable or sheriff;
(2) enter any land to carry out the duties and functions of the division;
(3) make investigations of violations of the game and fish laws;
(4) take an affidavit, if it aids an investigation;
(5) arrest, without a warrant, a person who is detected in the actual violation of the game and fish laws, a provision of chapters 84A, 86A, 88 to 106A 361, sections 89.51 to 89.61; or 609.66, subdivision 1, clauses (1), (2), (5), and (7); and 609.68; and
(6) take an arrested person before a court in the county where the offense was committed and make a complaint.

The subdivision in issue is subdivision (2).

The majority misreads *State v. Hoagland* if they claim that *Hoagland* and 97A.205(2) do anything except allow conservation officers to enter land without being called trespassers. As the majority concedes, *Hoagland* is not authority for conservation officers to make warrantless searches without probable cause. A conservation officer can enter private or public land pursuant to 97A.205(2) but once having entered remains subject to the fourth amendment of the Bill of Rights.[5] Unless the officer has either probable cause that a crime has been committed, or enough articulable suspicion to stop and question someone, neither of which the state has here, section 97A.205(5) does not supply missing constitutional requirements by osmosis.

It cannot be assumed that the legislature, in passing section 97A.205(2), intended to override or create an exception to the fourth amendment for conservation officers. To do so would be to presume that the legislature intended an unconstitutional result, and it is an established principle of

---

423 (1980); *State v. Wolfe,* 137 Ariz. 133, 669 P.2d 111 (Ariz.App.1983); *State v. Taylor,* 145 Vt. 437, 491 A.2d 1034 (1985); *Commissioner Commonwealth v. Palm,* 315 Pa.Super. 377, 462 A.2d 243 (1983); *State v. Hillock,* 384 A.2d 437 (Me.1978).

**5.** The right of the people to be secure in their persons, houses, papers, and effects, against un-reasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. amend IV.

statutory interpretation that statutes are construed so as to avoid an unconstitutional result. *National Labor Relations Board v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979); *Application of Christenson*, 417 N.W.2d 607 (Minn.1987).

The policy behind this principle is that courts presume that legislatures do not intend unconstitutional results. Therefore, to remain in harmony with the fourth amendment, the Minnesota statute at issue here must be interpreted, not to override the United States Constitution, but to be read in conformity therewith. With or without section 97A.205(5), the basic alternatives for a valid search remain. There must be a valid search warrant, or enough probable cause to support a warrantless search, or enough articulable suspicion to lawfully stop to investigate possible criminal activity. These three do not exist here. Section 97A.205(2), standing alone, is not a fourth.

## IV.

*Open field exception*

I submit the so-called "open fields" doctrine simply has no applicability to this fact situation, and should not enter into the analysis. The leading United States Supreme Court case states that a game officer may enter "open fields" without probable cause since the owner of land has no reasonable expectation of *privacy* in that field. *Oliver v. United States*, 466 U.S. 170, 171, 104 S.Ct. 1735, 1737, 80 L.Ed.2d 214 (1984). Reviewing the facts in *Oliver*, we find as follows: two narcotics agents walked around a locked gate marked with a "no trespassing" sign and saw, in plain view, marijuana growing on Oliver's land. They seized the marijuana and arrested Oliver upon probable cause. Likewise, in *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed.2d 898 (1924), federal revenue officers pursued Hester onto his private land where they seized moonshine whiskey dropped by Hester, and left in plain view during his flight from the officers.

In each case, the evidence was seized on private lands pursuant to the evidence of criminal activity being directly visible to the naked eye. If law enforcement officers, whether on or off the land, walk by, drive by, or fly over private land and see growing marijuana or other illegal activity in plain sight, it is reasonable and compatible with due process that they can use what they have seen to bolster further investigation and search.

Here, the uncased gun, the object of this exercise, was in no way, shape or form visible to Buria, either from outside the deer camp or after he had walked through the gate. All Buria could see was appellant's vehicle. Appellant's vehicle was not against the law. Appellant's vehicle was not in the process of committing any violations of the law. Buria had to motion appellant over, stop appellant's vehicle, walk up to it and look inside before he could see the uncased weapon. For this automobile stop which resulted in the search and seizure at issue, Buria needed at least articulable suspicion that the person he stopped, appellant, was engaged in some type of criminal activity. *Cortez*, 449 U.S. at 417–418, 101 S.Ct. at 694–695.

Buria did not, and thus the fruits of the stop must be suppressed if appellant's fourth amendment rights are to be preserved. If Buria, either from outside the fence or after walking through the gate, saw an illegal weapon lying in plain view on the ground in the field, you would then have the *Oliver* "open fields" exception to consider.[6] That is not our facts.

State troopers, county sheriffs, and municipal policemen are bound by the dictates of the Minnesota constitution and the Constitution of the United States in the performance of their duties, even when investigating and pursuing those suspected of major felonies. There are no exceptions because the crime under investigation is,

---

**6.** *See Allinder v. State of Ohio*, 808 F.2d 1180, 1185 (6th Cir.1987) ("There is no case where the open fields doctrine has been applied to allow a search of personal effects or of a commercial structure in a field.")

for instance, drug dealing, violent assault, or homicide. Thus, the mandate against illegal stops, and against improper search and seizure must also, through the application of reason, apply to the conservation officer in search of the dastardly scofflaw who, knowing that the daily limit on sunfish is 30, catches 31.

I would reverse and suppress the seizure of the uncased weapon as being the product of a stop conducted without "articulable suspicion" and a warrantless search conducted without probable cause.