**STATE of Minnesota, Respondent,**

v.

**Cal S. SORENSON,
Petitioner, Appellant.**

**No. C9–88–225.**

Supreme Court of Minnesota.

June 2, 1989.

Bruce Nielsen, Lancaster, for appellant.

Dennis M. Sobolik, Kittson County Atty., Brink, Sobolik, Severson, Vroom & Malm, P.A., Hallock, and Robert Stanich, Sp. Asst. Atty. Gen., St. Paul, for respondent.

YETKA, Justice.

Appellant, Cal S. Sorenson, appeals his conviction by the Kittson County District Court for transporting a loaded, uncased firearm in a motor vehicle in violation of Minn.Stat. § 97B.045(1) (1988). The court of appeals affirmed the conviction. We also affirm.

On November 9, 1987, during deer hunting season, State Conservation Officer Brian Buria drove to appellant's hunting camp located in Caribou Township in Kittson County. Even though he had never seen hunters on appellant's land before, he assumed that it was a hunting camp because of a recent increase in traffic in the area and because it did not appear to be a "year around type home."

A gate blocked the road leading to appellant's camp and "No Trespassing" signs were posted at the entrance. Officer Buria opened the gate and drove into the yard of the camp where he saw a deer hanging from a meat pole and several vehicles parked nearby. He verified that the deer was legally tagged and also observed that a deer stand overlooking a nearby field appeared to be higher than the legal limit of 9 feet. He drove about 200 yards into the field, away from the camp, left his truck and was walking when he heard appellant's vehicle approach. Officer Buria motioned for appellant to stop, informed him that he was a state conservation officer and asked to check his license. At that time, Officer Buria saw a loaded, uncased firearm on the front seat of appellant's pick-up and later issued him a citation for violating Minn.Stat. § 97B.045(1) (1988).

The issues raised on appeal are:

I. Did Officer Buria's warrantless entry onto appellant's land violate appellant's rights under either the United States or Minnesota Constitution?

II. Did Officer Buria have sufficient articulable suspicion to stop appellant's vehicle?

III. Does Minn.Stat. § 97A.205(2) permit state conservation officers to make warrantless entries onto private land without probable cause?

I.

Appellant alleges that the warrantless entry onto his land was an unreasonable search under both the fourth amendment of the United States Constitution and arti-

cle I, section 10 of the Minnesota Constitution.

The initial inquiry in every search-and-seizure analysis is whether the defendant has standing to object to the search or seizure. Such standing exists only if the person protesting the search has a justifiable or reasonable expectation of privacy in the area searched or the item seized. *State v. Oquist*, 327 N.W.2d 587, 589 (Minn.1982); *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967).

The court of appeals held that appellant did not have standing to object to the warrantless entry onto his land because Officer Buria's activities took place in "open fields" and the special protections of the fourth amendment do not extend to open fields. *State v. Sorenson*, 430 N.W.2d 231, 233 (Minn.App.1988). *See Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924) (special protection accorded by the fourth amendment to people in their "persons, houses, papers and effects" does not extend to open fields).

Appellant advances several arguments in response to the court of appeals' determination that he did not have standing. He first argues that article I, section 10 of the Minnesota Constitution [1] mandates greater protection from unreasonable government intrusion than that offered by the majority in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), and urges the court to adopt the rule set out by the *Oliver* dissent. In *Oliver*, the majority of the United States Supreme Court held that private lands may be considered open fields even when steps have been taken to bar the public, such as erecting a fence and posting "No Trespassing" signs. 466 U.S. at 179, 104 S.Ct. at 1741. In a lengthy dissent, Justice Marshall criticized this holding and suggested that a better rule would be that private land sufficiently marked to render entry thereon a criminal trespass should be protected by the fourth amendment's prohibition against unreasonable searches and seizures. 466 U.S. at 195–96, 104 S.Ct. at 1750. (Marshall, J., dissenting).

At least one commentator agrees with appellant's position that the dissent's view is the better rule. *See* 1 W. LaFave, *Search and Seizure* § 2.4(a), at 427–28 (2d ed. 1987). While this court may interpret a provision of the Minnesota Constitution more stringently than an identical provision of the federal Constitution, it will not do so lightly. *State v. Hamm*, 423 N.W.2d 379, 382 (Minn.1988); *State v. Gray*, 413 N.W. 2d 107, 111 (Minn.1987).

The court of appeals refused to consider the applicability of the Minnesota Constitution because it was not argued at the trial court level. *Sorenson*, 430 N.W.2d at 234. Usually, we will not decide issues which are not first addressed by the trial court and are raised for the first time on appeal even if the issues involve constitutional questions regarding criminal procedure. *State v. Kremer*, 307 Minn. 309, 312–13, 239 N.W.2d 476, 478 (1976); *State v. Merrill*, 274 N.W.2d 99, 109 (Minn.1978). We may, however, at our discretion, decide to hear such issues when the interests of justice require their consideration and addressing them would not work an unfair surprise on a party. *See, e.g., Tischendorf v. Tischendorf*, 321 N.W.2d 405, 410 (Minn. 1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983); *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 536 n. 15 (Minn.1986).

■ We decline to apply the Minnesota Constitution in this case because the question of its applicability was neither adequately briefed nor litigated. Accordingly, we decide this case solely on the basis of the federal constitutional issues raised by appellant.

Appellant first argues that *Oliver v. United States* does not apply in this case

---

1. Article I, section 10 of the Minnesota Constitution is virtually identical to the fourth amendment of the United States Constitution and provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.

because, in the cases discussed in *Oliver,* the police had probable cause to believe that illegal activity was taking place on the land before making their warrantless entry. Here, the court of appeals found that Officer Buria lacked probable cause to believe that any game law violation had occurred. *Sorenson,* 430 N.W.2d at 233.

■ Appellant's reliance on the existence of probable cause is incorrect. If police or other law enforcement officers enter land which is found to be an open field, then the existence of probable cause is irrelevant and unnecessary. *State v. Nolan,* 356 N.W.2d 670, 671 (Minn.1984). A determination that a search or seizure falls within the open-fields doctrine negates a defendant's right to complain of the police conduct. Thus, existence of probable cause is relevant only when a person has demonstrated a legitimate or reasonable expectation of privacy in an area.

Appellant next argues that, even under *Oliver,* his constitutional rights were violated because his citation was the result of observations made while Officer Buria was within the curtilage of his hunting camp. As a result, Officer Buria's discovery of the loaded, uncased firearm must be suppressed as the "fruit" of the illegal search of the curtilage area.

*Oliver* left intact the principle that fourth-amendment protections against unreasonable search and seizures extend to the curtilage of a home. Though the term "curtilage" defies precise definition, it has been referred to as the "area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" 466 U.S. at 180, 104 S.Ct. at 1742 (quoting *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886)). Factors used in determining whether an area is within the curtilage include "whether the area is included within an enclosure surrounding the home, the nature of uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *State v. Krech,* 403 N.W. 2d 634, 637 (Minn.1987) (quoting *U.S. v.*

*Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987)).

■ Several difficulties exist with appellant's final argument. First, it is impossible to determine from the scant trial court record whether Officer Buria was, at anytime, ·within an area which could be considered the curtilage of the hunting camp. A fence did surround the outer limits of appellant's land, but there is no indication in the record whether the area around the camp was enclosed or if steps had been taken to protect it from observation. Other than the description of appellant's structure as a hunting camp, there is nothing in the record describing the camp or detailing its uses. The only feature separating the land Officer Buria was on from the rest of appellant's land was that it was covered by short grass and close to the camp. The record does not reveal how close Buria came to the hunting camp or where he was standing when he saw the stripped deer, the hunting stand or the unattended vehicles.

Even if it is assumed that Officer Buria was within the curtilage when he made these observations, the discovery of the firearm would not be suppressed. In order for evidence to be considered "fruit of the poisonous tree," it must be found that it was obtained by exploitation of a prior illegality. *State v. Sickels,* 275 N.W.2d 809, 813–14 (Minn.1979) (citing *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Officer Buria's observations only confirmed his suspicion, formed prior to the time he entered the land, that hunting was occurring. It is very likely that Officer Buria would have remained on the land and stopped appellant's vehicle even if he had not seen the deer, deer stand or vehicles.

## II.

In his appeal to this court, appellant, for the first time, questions the validity of the stop of his vehicle by Officer Buria. The fact that the open-fields doctrine permitted Officer Buria's warrantless entry onto appellant's land does not suspend all privacy and personal security protections of the

fourth amendment. *Oliver,* 466 U.S. at 179 n. 10, 104 S.Ct. at 1742 n. 10. The protections of the fourth amendment apply to seizures of the person, including brief investigatory stops such as the stop of appellant's vehicle. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). This is true even when the stop is made by a conservation officer. *See State v. Richards,* 284 N.W.2d 549, 551 (Minn.1979).

The standard for determining the validity of a brief investigatory stop is whether the law enforcement officer is able to articulate a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Appelgate v. Comm'r of Pub. Safety,* 402 N.W.2d 106, 108 (Minn.1987) (quoting *Cortez,* 449 U.S. at 417–18, 101 S.Ct. at 695).

■ The first problem with appellant's argument is that the stop was not challenged at either the trial court or the court of appeals.[2] As stated earlier, this court is most reluctant to address issues that have not been raised at the lower courts.

Second, even if we were inclined to examine the stop of appellant's vehicle, we could not decide the question because of insufficient information in the trial court record. The validity of the stop was not an issue at the trial court; therefore, no inquiry was made as to the reason Officer Buria stopped appellant's vehicle or other circumstances surrounding the stop. The information available indicates that Officer Buria articulated an objective and particularized basis for the stop. Officer Buria was on isolated, rural land which he had good reason to suspect was being used as a hunting camp. Most likely, any vehicle on the private land was engaged in hunting; thus, Officer Buria may have been justified in stopping appellant's vehicle for the limited purpose of checking his hunting license. Even this conclusion, however, is not supportable due to the paucity of the trial court record on this issue. We thus decline to rule on it.

2. In his dissent, Judge Randall analyzed the stop under the above standard and found it invalid.

### III.

The court of appeals frames the issue presented by this case as whether, under Minn.Stat. § 97A.205(2), conservation officers need probable cause prior to making warrantless searches on private land. *Sorenson,* 430 N.W.2d at 233. The court of appeals determined that appellant lacked standing to object to the search and did not discuss further the applicability of section 97A.205(2).

Minn.Stat. § 97A.205(2) provides: "An enforcement officer is authorized to: * * * enter any land to carry out the duties and functions of the division." The state maintains that this statute gives conservation officers broad power to enter onto private land in connection with their duties.

The state's primary argument is that, unless conservation officers are given the power to enter onto private lands even when probable cause of wrongdoing does not exist, enforcement of the state's game and fish laws would be virtually impossible. Of course, a statute cannot confer rights on law enforcement officers that the U.S. Constitution denies. While the duties of conservation officers may require that they have access to certain private lands, Minn. Stat. § 97A.205(2) is not the mechanism by which this access is given.

■ Conservation officers, like other law enforcement officers, are subject to the requirements of the fourth amendment and other constitutional provisions. *See State v. Richards,* 284 N.W.2d 549 (Minn.1979). Searches by conservation officers are no less intrusive than police searches and the same possibilities exist for abuse. The legislature's recognition of this is demonstrated by another provision in chapter 97A, Minn.Stat. § 97A.231 (1988), which provides for the issuance of search warrants to state conservation officers upon a showing of probable cause that a state game law has been violated.

430 N.W.2d at 235–36 (Randall, J., dissenting).

We need not look to section 97A.205(2) as the means of allowing state conservation officers access to private lands because the open-fields doctrine is broad enough to provide sufficient access.

The term "open field" has been construed to apply not only to an open field in a literal sense, but also to wooded areas, deserts, vacant lots in urban areas, open beaches, reservoirs and open waters. 1 W. LaFave, *Search & Seizure* § 2.4(a), at 425–26 (2d ed. 1987). This broad definition, along with the expansion of the doctrine in *Oliver,* appears to permit government intrusion anywhere except homes, the curtilage of homes and other areas in which a reasonable expectation of privacy can be proven.

■ Clearly, the open-fields doctrine permits a conservation officer to enter almost any area in order to enforce the state's game and fish laws. Accordingly, while searches and seizures by conservation officers are subject to constitutional guidelines, the record in this case compels affirmance of the trial court and the decision of the court of appeals for the reasons outlined.

KELLEY, J., specially concurs.

KELLEY, Justice (concurring specially):

I concur in the majority opinion. I write only to note that, in my opinion, even had the appellant timely raised the issue in the trial court relative to the alleged applicability of article I, section 10 of the Minnesota Constitution, the claim would nonetheless have been meritless. As the majority noted, article I, section 10 is virtually identical to the applicable portion of the fourth amendment to the U.S. Constitution. In such case, this court will not lightly reject a Supreme Court interpretation of identical, or substantially similar language, nor "cavalierly construe our constitution more expansively than the United States Supreme Court has considered the federal constitution." *State v. Gray,* 413 N.W.2d 107, 111 (Minn.1987). The court historically has not, nor should it, absent unique or distinctive Minnesota conditions, depart from the general principle favoring unanimity merely because of its philosophical rejection of a particular constitutional interpretation emanating from the federal Supreme Court. *See, e.g.* Galie, *The Other Supreme Courts: Judicial Activism Among State Supreme Courts,* 33 Syracuse L.Rev. 731 (1982); Collins, *Reliance on State Constitutions—Away from a Reactionary Approach,* 9 Hastings Const.L.Q. 1 (1981); *Developments in the Law—The Interpretation of State Constitutional Rights,* 95 Harv.L.Rev. 1324, 1359 (1982).