*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1423**

State of Minnesota,
Respondent,

vs.

Derrick Irving Stevenson,
Appellant.

**Filed September 29, 2014
Reversed
Smith, Judge**

Ramsey County District Court
File No. 62-CR-12-9803

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Larkin, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**SMITH**, Judge

We reverse appellant's conviction of possession of a firearm by an ineligible felon because, viewing the totality of the circumstances, the initial warrantless entry by police was not supported by exigent circumstances and was, therefore, unreasonable.

## FACTS

On December 10, 2012, in connection with a warrantless search of a home, respondent State of Minnesota charged appellant Derrick Irving Stevenson with possession of a firearm by an ineligible felon, in violation of Minn. Stat. § 609.165, subd. 1b(a) (2012). Stevenson moved to suppress all evidence obtained as a result of the warrantless search.

During a hearing on the motion, Officer Tanya Tamm testified that, on the afternoon of December 7, 2012, she responded to a St. Paul residence on a complaint of loud music. She opened a storm door and knocked on the house's "solid wood door." After a "normal knock" on the door received no response, and because the music was so loud it could be heard from "halfway down the block," she pounded on the door with her fist. This second knock caused the door to open approximately two feet, leading her to speculate that the door had not been properly secured. Officer Tamm testified that when the door opened, she "immediately was overcome by the smell of unburnt marijuana." She also testified that she "immediately identified" herself as a St. Paul police officer. Officer Tamm testified that she then "opened the door and stepped like right in." She testified that she "was in the entryway, but didn't go all the way in. So half of [her] body

was outside the door and half of [her] body was inside the door." She testified that "[a]s [she] opened the door, [she] could see . . . an unknown black male sitting . . . at a computer," and once she had "pushed the door a little bit further open, there was a couch" with a woman lying on it. She testified that after she opened the door, the black man "stood up," "looked around," and "took off" into a different room. Approximately 30 to 45 seconds later—after Officer Tamm called for backup— a black man "peeked around the corner" where the first man had fled. Officer Tamm testified that she ordered the man, subsequently identified as Stevenson, into the living room.

Officer Lynette Cherry testified that she was among the officers to respond to Officer Tamm's call. She testified that when she arrived at the residence, there was a "strong" odor of marijuana and Officer Tamm requested a protective sweep search because "someone ran from her when she first entered the house." Officer Cherry testified that during the protective sweep search, a gun was discovered in the upstairs bedroom, in plain view. This discovery ultimately led to Stevenson's arrest.

At the hearing, a defense investigator testified about the mechanics and condition of the entry into the house, including a "primary screen door" that swings outward, a "secondary steel door" that swings inward, and an "extremely damaged" doorframe.

After the hearing, the parties filed simultaneous memoranda. In pertinent part, Stevenson argued that Officer Tamm lacked probable cause and exigent circumstances to enter the house without a warrant. Specifically, he argued that Officer Tamm entered the house "[w]hen she opened the first door to" the residence, and this entry was not supported by probable cause or exigent circumstances because, at that moment, she was

merely responding to a complaint of loud music. The state approached this issue differently, addressing the moment when Officer Tamm intentionally opened the second door, which was ajar from the knock. It asserted that "Officer Tamm was lawfully inside the premises because she had both probable cause and an exigency: She smelled the marijuana, and the occupants knew that police were present, creating a risk that evidence would be destroyed."

The district court denied Stevenson's motion, concluding that "Officer Tamm was justified in walking onto the porch and knocking on the door," it is not a "constitutional violation for an officer to open a screen door before knocking on a main door of a house," and "Officer Tamm did not damage or force the door open," it merely "opened" when she knocked on it.

The matter proceeded to a bench trial, and the district court found Stevenson guilty as charged.[1] The district court denied Stevenson's motion for a downward dispositional or durational departure and sentenced him to 60 months' imprisonment.

## DECISION

## I.

Abandoning his district court argument that Officer Tamm entered the residence unconstitutionally by opening the screen door to knock on the main door, Stevenson now

---

[1] During trial, Officer Tamm testified, "As soon as the door popped open, I could immediately smell unburnt marijuana coming from the house." She continued, "As I opened the door—just pushed it open—I was still standing one foot inside the residence, one foot out. I immediately announced St. Paul Police, and I [saw] a black male sitting at a computer." Subsequently, the man "stood up, turned around, looked both ways, and fled."

argues that Officer Tamm "lacked authority to cross the threshold . . . to search the entire residence."  Generally, we will not consider issues not argued to and decided by the district court, including constitutional questions of criminal procedure.  *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996); *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn. 1989).  However, we have discretion to consider issues raised for the first time on appeal "when the interests of justice require their consideration and addressing them would not work an unfair surprise on a party."  *Sorenson*, 441 N.W.2d at 457.  Because the state has not asserted waiver, and because it raised Officer Tamm's actual entry in the district court, we exercise this discretion here.

When reviewing pretrial orders on motions to suppress evidence, we review the district court's factual findings for clear error, *State v. Lemieux*, 726 N.W.2d 783, 787 (Minn. 2007), and its decision whether to suppress the evidence de novo, *State v. Harris* 590 N.W.2d 90, 98 (Minn. 1999).

Both the United States and Minnesota Constitutions prohibit "unreasonable" searches by the government of "persons, houses, papers, and effects."  U.S. Const. amend. IV; Minn. Const. art. I, § 10.  To establish that the warrantless entry of a person's residence was reasonable, the state must demonstrate that the entry was either pursuant to a valid consent or supported by the existence of probable cause and exigent circumstances.  *State v. Paul*, 548 N.W.2d 260, 264 (Minn. 1996).  Because the state does not allege consent, we address the probable-cause and exigent-circumstances elements in turn.

5

*Probable Case*

Stevenson alleges that Officer Tamm lacked probable cause to enter the residence, arguing that she lacked probable cause to believe there was criminal activity because "the odor of **unburned** marijuana. . . did not support an argument that marijuana was being consumed." Probable cause "requires 'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *State v. Holiday*, 749 N.W.2d 833, 843 (Minn. App. 2008) (quoting *Olson v. Comm'r of Pub. Safety*, 371 N.W.2d 552, 555 (Minn. 1985)). Because the mere *possession* of marijuana is a crime regardless of whether it is burned or otherwise consumed, Stevenson's probable-cause argument is without merit. *See* Minn. Stat. §§ 152.01, subd. 9 (defining marijuana as "all parts of the plant of any species of the genus Cannabis"), .021, subd. 2(4) (defining first-degree possession crime), .022, subd. 2(4) (defining second-degree possession crime), .023, subd. 2(5) (defining third-degree possession crime) (2012).

*Exigent Circumstances*

Stevenson also challenges the existence of exigent circumstances, asserting that the district court erroneously found that the man at the computer fled before Officer Tamm entered the residence. The state agrees that the issue turns on whether the district court's purported finding that the man at the computer fled before Officer Tamm crossed the threshold of the residence, but it argues that the finding is not clearly erroneous. Our examination of the record establishes, however, that the district court did not explicitly address the timing of the man's flight. But "because there was absolutely no conflict in the evidence at the [suppression] hearing in this case, we find no prejudice . . . in the

[district] court's failure to provide findings of fact." *State v. Rainey*, 303 Minn. 550, 550, 226 N.W.2d 919, 921 (1975). Officer Tamm consistently testified that when the door popped open, she pushed it in further and stepped partially inside; only after these actions did the man at the computer flee. And Officer Cherry testified that, when she requested a protective sweep search, Officer Tamm said that "someone ran from her when she first entered the house." We conclude that this record can support only the finding that the man fled after Officer Tamm had entered the residence and that any other finding would be clearly erroneous.

We therefore turn to the question of whether exigent circumstances supported Officer Tamm's entry. Citing *State v. Gray*, the state urges that we conduct a single-factor exigency analysis to determine whether one consideration—the potential that evidence could be destroyed—justified the officer's entry into the residence. *See* 456 N.W.2d 251, 256 (Minn. 1990) (establishing a single-factor test for exigent circumstances); *State v. Paul*, 548 N.W.2d 260, 264 (Minn. 1996) (recognizing "imminent destruction of evidence" as a factor that may support an exigent-circumstances finding). Recently, however, the United States Supreme Court analyzed a range of single-factor exigency cases—including destruction-of-evidence exigencies—treating each factor as but a portion of an overarching totality-of-the-circumstances analysis. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1559 (U.S. 2013). Thus, although a single factor *may* support an exigency finding, "it does not do so categorically." *Id.* at 1563.

Exigent circumstances can include "hot pursuit, danger to human life, imminent destruction of evanescent evidence, and possible flight of a suspect." *Paul*, 548 N.W.2d at 264. The state asserts only destruction of evidence as a possible exigent circumstance justifying Officer Tamm's entry into the residence. Because we have previously concluded that the record can support only the finding that Officer Tamm entered the residence before the man at the computer fled to potentially destroy evidence, her entry was not justified by the threat that evidence might be destroyed. Because we can perceive no other circumstances that might constitute exigency, we conclude that Officer Tamm's entry was not supported by exigent circumstances when looking to the totality of the circumstances.

"If a warrantless entry is made without probable cause and exigent circumstances, its fruit must be suppressed." *Id.* Because, when looking to the totality of the circumstances, Officer Tamm's entry was not supported by exigent circumstances, and "there is certainly no exception to the warrant requirement for the officer who barely cracks open the front door and sees nothing but the nonintimate rug on the vestibule floor," *Kyllo v. U.S.*, 533 U.S. 27, 38, 121 S. Ct. 2038, 2045 (2001), the warrantless search here was unreasonable and its fruits must be suppressed. Therefore, we reverse Stevenson's conviction.[2]

**Reversed.**

---

[2] Because we reverse based on the warrantless entry, we do not reach Stevenson's other arguments.